## UNITED STATES *v.* HELSTOSKI

No. 78–349.   Argued March 27, 1979—Decided June 18, 1979

Burger, C. J., delivered the opinion of the Court, in which White, Marshall, Blackmun, and Rehnquist, JJ., joined. Stevens, J., filed an opinion concurring in part and dissenting in part, in which Stewart, J., joined, *post,* p. 494. Brennan, J., filed a dissenting opinion, *post,* p. 498. Powell, J., took no part in the consideration or decision of the case.

*Solicitor General McCree* argued the cause for the United States. With him on the brief were *Assistant Attorney General Heymann, Deputy Solicitor General Frey,* and *Louis M. Fischer.*

*Morton Stavis* argued the cause for respondent. With him on the briefs was *Louise Halper.*

*Stanley M. Brand* argued the cause for Thomas P. O'Neill, Jr., Speaker of the United States House of Representatives, et al. as *amici curiae.* With Mr. Brand on the brief was *Neal P. Rutledge.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in this case to resolve important questions concerning the restrictions the Speech or Debate Clause [1] places on the admissibility of evidence at a trial on charges that a former Member of the House had, while a Member, accepted money in return for promising to introduce and introducing private bills.[2]

## I

Respondent Helstoski is a former Member of the United States House of Representatives from New Jersey. In 1974, while Helstoski was a Member of the House, the Department of Justice began investigating reported political corruption, including allegations that aliens had paid money for the introduction of private bills which would suspend the application of the immigration laws so as to allow them to remain in this country.

The investigation was carried on before nine grand juries. The grand juries were called according to the regular practice in the District of New Jersey, which was to have a different grand jury sitting on each of six days during the week; on two days there was a second grand jury. When the United States Attorney was ready to present evidence, he presented it to whichever grand jury was sitting that day. There was therefore no assurance that any grand jury which voted an indictment would see and hear all of the witnesses or see all of the documentary evidence. It was contemplated that the grand jury that was asked to return an indictment would review

---

[1] The Speech or Debate Clause provides that "for any Speech or Debate in either House, they [the Senators and Representatives] shall not be questioned in any other Place." Art. I, § 6.

[2] This case was argued together with No. 78–546, *Helstoski* v. *Meanor, post*, p. 500, which involves the question of whether mandamus is an appropriate means of challenging the validity of an indictment on the ground that it violates the Speech or Debate Clause.

transcripts of relevant testimony presented to other grand juries.

Helstoski appeared voluntarily before grand juries on 10 occasions between April 1974 and May 1976. Each time he appeared, he was told that he had certain constitutional rights. Different terms were used by different attorneys for the United States, but the following exchange, which occurred at Helstoski's first appearance before a grand jury, fairly represents the several exchanges:

> "Q. You were told at that time [at the office of the United States Attorney earlier]—and just to repeat them today—before we begin you were told that you did not have to give any testimony to the Grand Jury or make any statements to any officer of the United States. You understand that, do you not?
>
> "A. I come with full and unlimited cooperation.
>
> "Q. I understand that. . . .
>
> .    .    .    .    .
>
> "Q. And that you also know that anything that you may say to any agent of the United States or to this Grand Jury may later be used in a court of law against you; you understand that as well?
>
> [Affirmative response given.]
>
> .    .    .    .    .
>
> "A. Whatever is in my possession, in my files, in its original form, will be turned over. Those files which I have—some of them are very, very old. I've been in Congress since 1965. We mentioned this.
>
> .    .    .    .    .
>
> "Q. The Grand Jury wants from you simply the records that are in your possession, whether it be in your office in East Rutherford, New Jersey, Washington, D. C., your home, wherever they may be, the Grand Jury would like you to present those documents. Of course, you under-

stand that if you wish not to present those documents you do not have to and that anything you do present may also, as I have told you about your personal testimony, may be used against you later in a court of law?

"A. I understand that. Whatever I have will be turned over to you with full cooperation of [sic] this Grand Jury and with yourself, sir.

.        .        .        .        .

"A. I understand that. I promise full cooperation with your office, with the FBI, this Grand Jury.

"Q. The Grand Jury is appreciative of that fact. They also want to make certain that when you are giving this cooperation that you understand, as with anyone else that might be called before a United States Grand Jury, exactly what their constitutional rights are. And that is why I have gone through this step by step carefully so there will be no question and there will be no doubt in anybody's mind.

"A. As I indicated, I come with no request for immunity and you can be assured there won't be any plea of the Fifth Amendment under any circumstances."

Helstoski testified as to his practices in introducing private immigration bills, and he produced his files on numerous private bills. Included in the files were correspondence with a former legislative aide and with individuals for whom bills were introduced. He also provided copies of 169 bills introduced on behalf of various aliens.

Beginning with his fourth appearance before a grand jury, in October 1975, Helstoski objected to the burden imposed by the requests for information. The requests, he claimed, violated his own right of privacy and that of his constituents. In that appearance, he also stated that there were "some serious Constitutional questions" raised by the failure of the United States Attorney to return tax records which Helstoski had voluntarily delivered. He did not, however, assert a privilege

against producing documents until the seventh appearance, on December 12, 1975. Then he declined to answer questions, complaining that the United States Attorney had stated to the District Court that the grand jury had concluded that Helstoski had misapplied campaign funds. He asserted a general invocation of rights under the Constitution and specifically listed the Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments.

At the next, and eighth, appearance on December 29, 1975, he repeated his objections to the conduct of the United States Attorney. After answering questions about campaign financing, personal loans, and other topics, he declined to answer questions about the receipt of a sum of money. That action was based upon his privilege under the Fifth Amendment "and on further grounds that to answer that question would violate my rights under the Constitution."

Because the grand jury considered that Helstoski's invocation of constitutional privileges was too general to be acceptable, it adjourned and reconvened before the District Judge to seek a ruling on Helstoski's claim of privilege "under the Constitution." After questioning Helstoski, the judge stated that the privilege against compulsory self-incrimination was the only privilege available to Helstoski. The judge assisted Helstoski in wording a statement invoking the privilege that was satisfactory to the grand jury. Thereafter, Helstoski invoked his Fifth Amendment privilege in refusing to answer further questions, including a series of questions about private immigration bills.

Not until his ninth, and penultimate, appearance before a grand jury did Helstoski assert any privilege under the Speech or Debate Clause. On May 7, 1976, Helstoski asked if he was a target of the investigation. The prosecutor declined to answer the question, stating "it would be inappropriate for this Grand Jury or indeed for me to say that you are a target." Helstoski then invoked his privilege against compulsory self-

incrimination and declined to answer further questions or to produce documents.[3] He also declined to produce a copy of an insert from the Congressional Record, saying "I consulted with my attorneys and based on the statement that was made on the floor, I don't have any right to be questioned at any other time or place as reference to statements made on the floor of Congress."

Although that was the first instance which can even remotely be characterized as reliance upon the Speech or Debate Clause, Helstoski earlier had indicated an awareness of another aspect of the constitutional privileges afforded Congressmen.[4] During his fourth appearance before a grand jury, in October 1975, Helstoski complained that he had been served with a subpoena directing him to appear before a grand jury on a day that Congress was in session.[5]

---

[3] That Helstoski may not have had the extent of his privilege clearly in mind is indicated by the following exchange between him and an Assistant United States Attorney during Helstoski's ninth appearance before a grand jury:

"A. [Helstoski] I stand on my Constitutional privilege regarding the Fifth Amendment.

"Q. And that privilege is against self incrimination?

"A. Whatever the Fifth Amendment is."

[4] The District Court found that "Helstoski was aware of the Speech or Debate Clause at the time he made his first grand jury appearance. He had recently concluded litigation involving his franking privilege in which he had relied upon the Speech or Debate Clause. *Schiaffo* v. *Helstoski*, 350 F. Supp. 1076 (D. N. J. 1972), rev'd in part, aff'd in part and remanded, 492 F. 2d 413 (3d Cir. 1974). In that litigation, Helstoski was represented by the same attorney who represented him throughout his grand jury appearances."

[5] He offered this explanation to an Assistant United States Attorney:

"A. [Helstoski] Do you want to get into the Constitutional question of whether or not you could serve a member of Congress while Congress is in session?

"You know very well that can't be done . . . .

At his 10th, and final, appearance before a grand jury, Helstoski invoked his Fifth Amendment privilege. But he also referred repeatedly to "other constitutional privileges which prevail." Nevertheless, he continued to promise to produce campaign and personal financial records as requested by the grand jury and directed by the District Judge.

## II

In June 1976, a grand jury returned a multiple-count indictment charging Helstoski and others with various criminal acts. Helstoski moved to dismiss the indictment, contending that the grand jury process had been abused and that the indictment violated the Speech or Debate Clause.

The District Judge denied the motion after examining a transcript of the evidence presented to the indicting grand jury. He held that the Speech or Debate Clause did not require dismissal. He also ruled that the Government would not be allowed to offer evidence of the actual performance of any legislative acts. That ruling prompted the Government to file a motion requesting that the judge pass on the admissibility of 23 categories of evidence. The Government urged that a ruling was necessary to avoid the possibility of a mistrial. Helstoski opposed the motion, arguing that the witnesses would not testify as the Government indicated in its proffer.

The District Judge declined to rule separately on each of the categories. Instead, he ordered:

> "The United States may not, during the presentation of its case-in-chief at the trial of [this] Indictment, introduce evidence of the *performance of a past legislative*

"Q. Congressman, you've used the term 'illegal subpoena.' Who told you it was illegal?

"A. That's my own judgment based on the Constitution and the Rules of Procedure of the House of Representatives."

*act* on the part of the defendant, Henry Helstoski, derived from any source and for any purpose." (Emphasis added.)

The Government filed a timely appeal from the evidentiary ruling, relying upon 18 U. S. C. § 3731:

> "An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
>
> "The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
>
> .        .        .        .        .
>
> "The provisions of this section shall be liberally construed to effectuate its purposes."

The Court of Appeals affirmed the District Court's evidentiary ruling. 576 F. 2d 511 (CA3 1978). It first concluded that an appeal was proper under § 3731, relying primarily upon its earlier decision in *United States* v. *Beck,* 483 F. 2d 203 (1973), cert. denied, 414 U. S. 1132 (1974), and upon the language in the section mandating that it be "liberally construed."

Turning to the merits of the Government's appeal, the Court of Appeals rejected both of the Government's arguments: (a) that legislative acts could be introduced to show motive; and (b) that legislative acts could be introduced because Helstoski had waived his privilege by testifying before the grand juries. The court relied upon language in *United States* v. *Brewster,* 408 U. S. 501, 527 (1972), prohibiting the introduction of evidence as to how a Congressman acted on, voted on, or resolved

a legislative issue. The court reasoned that to permit evidence of such acts under the guise of showing motive would negate the protection afforded by the Speech or Debate Clause.

In holding Helstoski had not waived the protection of the Speech or Debate Clause, the Court of Appeals did not decide whether the protection could be waived. Rather, it assumed that a Member of Congress could waive the privilege, but held that any waiver must be "express and for the specific purpose for which the evidence of legislative acts is sought to be used against the member." 576 F. 2d, at 523–524. Any lesser standard, the court reasoned, would frustrate the purpose of the Clause. Having found on the record before it that no waiver was shown, it affirmed the District Court order under which the Government is precluded from introducing evidence of past legislative acts in any form.

In seeking review of the judgment of the Court of Appeals, the Government contends that the Speech or Debate Clause does not bar the introduction of all evidence referring to legislative acts. It concedes that, absent a waiver, it may not introduce the bills themselves. But the Government argues that the Clause does not prohibit it from introducing evidence of discussions and correspondence which describe and refer to legislative acts if the discussions and correspondence did not occur during the legislative process. The Government contends that it seeks to introduce such evidence to show Helstoski's motive for taking money, not to show his motive for introducing the bills. Alternatively, the Government contends that Helstoski waived his protection under the Speech or Debate Clause when he voluntarily presented evidence to the grand juries. Volunteered evidence, the Government argues, is admissible at trial regardless of its content.

Finally, the Government argues, by enacting 18 U. S. C. § 201, Congress has shared its authority with the Executive and the Judiciary by express delegation authorizing the indict-

ment and trial of Members who violate that section—in short an institutional decision to waive the privilege of the Clause.

## III

The Court's holdings in *United States* v. *Johnson*, 383 U. S. 169 (1966), and *United States* v. *Brewster, supra,* leave no doubt that evidence of a legislative act of a Member may not be introduced by the Government in a prosecution under § 201.[6] In *Johnson* there had been extensive questioning of both Johnson, a former Congressman, and others about a speech which Johnson had delivered in the House of Representatives and the motive for the speech. The Court's conclusion was unequivocal:

"We see no escape from the conclusion that such an intensive judicial inquiry, made in the course of a prosecution by the Executive Branch under a general conspiracy statute, violates the express language of the Constitution and the policies which underlie it." 383 U. S., at 177.

In *Brewster,* we explained the holding of *Johnson* in this way:

"*Johnson* thus stands as a unanimous holding that a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely

---

[6] We agree with the Court of Appeals that 18 U. S. C. § 3731 authorized the Government to appeal the District Court order restricting the evidence that could be used at trial. All of the requisites of § 3731 were met. There was an order of a District Court excluding evidence; a United States Attorney filed the proper certification; and the appeal was taken within 30 days. In *United States* v. *Wilson*, 420 U. S. 332, 337 (1975), we concluded that the purpose of the section was "to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." See also *United States* v. *Scott*, 437 U. S. 82, 84–85 (1978); H. R. Conf. Rep. No. 91–1768, p. 21 (1970); S. Rep. No. 91–1296, pp. 2–3 (1970); 116 Cong. Rec. 35659 (1970) (remarks of Sen. Hruska). There are no constitutional barriers to this appeal, and we conclude that the appeal was authorized by § 3731.

on legislative acts or the motivation for legislative acts. A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it. In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts." 408 U. S., at 512.

The Government, however, argues that exclusion of references to past legislative acts will make prosecutions more difficult because such references are essential to show the motive for taking money. In addition, the Government argues that the exclusion of references to past acts is not logically consistent. In its view, if jurors are told of promises to perform legislative acts they will infer that the acts were performed, thereby calling the acts themselves into question.

We do not accept the Government's arguments; without doubt the exclusion of such evidence will make prosecutions more difficult. Indeed, the Speech or Debate Clause was designed to preclude prosecution of Members for legislative acts.[7]

---

[7] MR. JUSTICE STEVENS suggests that our holding is broader than the Speech or Debate Clause requires. In his view, "it is illogical to adopt rules of evidence that will allow a Member of Congress effectively to immunize himself from conviction [for bribery] simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible." Post, at 498. Nothing in our opinion, by any conceivable reading, prohibits excising references to legislative acts, so that the remainder of the evidence would be admissible. This is a familiar process in the admission of documentary evidence. Of course, a Member can use the Speech or Debate Clause as a shield against prosecution by the Executive Branch, but only for utterances within the scope of legislative acts as defined in our holdings. That is the clear purpose of the Clause. The Clause is also a shield for libel, and beyond doubt it "has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the Framers." United States v. Brewster, 408 U. S. 501, 516 (1972). Nothing in our holding today, however, immunizes

The Clause protects "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Id.,* at 525. It "precludes any showing of how [a legislator] acted, voted, or decided." *Id.,* at 527. Promises by a Member to perform an act in the future are not legislative acts. *Brewster* makes clear that the "compact" may be shown without impinging on the legislative function. *Id.,* at 526.

We therefore agree with the Court of Appeals that references to past legislative acts of a Member cannot be admitted without undermining the values protected by the Clause. We implied as much in *Brewster* when we explained: "To make a prima facie case under [the] indictment, the Government need not show any act of [Brewster] *subsequent* to the corrupt promise for payment, for it is taking the bribe, not performance of the illicit compact, that is a criminal act." *Ibid.* (Emphasis altered.) A similar inference is appropriate from *Johnson* where we held that the Clause was violated by questions about motive addressed to others than Johnson himself. That holding would have been unnecessary if the Clause did not afford protection beyond legislative acts themselves.

MR. JUSTICE STEVENS misconstrues our holdings on the Speech or Debate Clause in urging: "The admissibility line should be based on the purpose of the offer rather than the specificity of the reference." *Post,* at 496. The Speech or Debate Clause does not refer to the prosecutor's purpose in offering evidence. The Clause does not simply state, "No proof of a legislative act shall be *offered";* the prohibition of the Clause is far broader. It provides that Members "shall not be *questioned* in any other Place." Indeed, as MR. JUSTICE STEVENS recognizes, the admission of evidence of legislative acts "may reveal [to the jury] some information about the performance of legislative acts and the legislator's motivation

---

a Member from punishment by the House or the Senate by disciplinary action including expulsion from the Member's seat.

in conducting official duties." *Post,* at 496. Revealing information as to a legislative act—speaking or debating—to a jury would subject a Member to being "questioned" in a place other than the House or Senate, thereby violating the explicit prohibition of the Speech or Debate Clause.

As to what restrictions the Clause places on the admission of evidence, our concern is not with the "specificity" of the reference. Instead, our concern is whether there is mention of a legislative act. . To effectuate the intent of the Clause, the Court has construed it to protect other "legislative acts" such as utterances in committee hearings and reports. *E. g., Doe* v. *McMillan,* 412 U. S. 306 (1973). But it is clear from the language of the Clause that protection extends only to an act that has already been performed. A promise to deliver a speech, to vote, or to solicit other votes at some future date is not "speech or debate." Likewise, a *promise* to introduce a bill is not a legislative act. Thus, in light of the strictures of *Johnson* and *Brewster,* the District Court order prohibiting the introduction of evidence "of the performance of a *past* legislative act" was redundant.

The Government argues that the prohibition of the introduction of evidence should not apply in this case because the protections of the Clause have been waived. The Government suggests two sources of waiver: (a) Helstoski's conduct and utterances, and (b) the enactment of 18 U. S. C. § 201 by Congress. The Government argues that Helstoski waived the protection of the Clause by testifying before the grand juries and voluntarily producing documentary evidence of legislative acts. The Government contends that Helstoski's conduct is sufficient to meet whatever standard is required for a waiver of that protection. We cannot agree.

Like the District Court and the Court of Appeals, we perceive no reason to decide whether an individual Member may waive the Speech or Debate Clause's protection against being prosecuted for a legislative act. Assuming that is possible.

we hold that waiver can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting. See generally *Johnson* v. *Zerbst,* 304 U. S. 458, 464 (1938) ("intentional relinquishment or abandonment of a known right or privilege"); *Garner* v. *United States,* 424 U. S. 648, 654 n. 9, 657 (1976).

The Speech or Debate Clause was designed neither to assure fair trials nor to avoid coercion. Rather, its purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government. The English and American history of the privilege suggests that any lesser standard would risk intrusion by the Executive and the Judiciary into the sphere of protected legislative activities. The importance of the principle was recognized as early as 1808 in *Coffin* v. *Coffin,* 4 Mass. 1, 27, where the court said that the purpose of the principle was to secure to every member *"exemption* from prosecution, for every thing said or done by him, as a representative, in the exercise of the functions of that office." (Emphasis added.)

This Court has reiterated the central importance of the Clause for preventing intrusion by Executive and Judiciary into the legislative sphere.

> "[I]t is apparent from the history of the clause that the privilege was not born primarily of a desire to avoid private suits . . . but rather to prevent intimidation by the executive and accountability before a possibly hostile judiciary.
>
> .    .    .    .    .
>
> "There is little doubt that the instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England and, in the context of the American system of separation of powers, is the predominate thrust of the Speech

or Debate Clause." *United States* v. *Johnson,* 383 U. S., at 180–181, 182.

We reaffirmed that principle in *Gravel* v. *United States,* 408 U. S. 606, 618 (1972), when we noted that the "fundamental purpose" of the Clause was to free "the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator."

On the record before us, Helstoski's words and conduct cannot be seen as an explicit and unequivocal waiver of his immunity from prosecution for legislative acts—assuming such a waiver can be made. The exchanges between Helstoski and the various United States Attorneys indeed indicate a willingness to waive the protection of the Fifth Amendment; but the Speech or Debate Clause provides a separate, and distinct, protection which calls for at least as clear and unambiguous an expression of waiver. No such showing appears on this record.

The Government also argues that there has been a sort of institutional waiver by Congress in enacting § 201. According to the Government, § 201 represents a collective decision to enlist the aid of the Executive Branch and the courts in the exercise of Congress' powers under Art. I, § 5, to discipline its Members. This Court has twice declined to decide whether a Congressman could, consistent with the Clause, be prosecuted for a legislative act as such, provided the prosecution were "founded upon a narrowly drawn statute passed by Congress in the exercise of its legislative power to regulate the conduct of its members." *Johnson, supra,* at 185. *United States* v. *Brewster,* 408 U. S., at 529 n. 18. We see no occasion to resolve that important question. We hold only that § 201 does not amount to a congressional waiver of the protection of the Clause for individual Members.

We recognize that an argument can be made from precedent and history that Congress, as a body, should not be free to strip individual Members of the protection guaranteed by the

Clause from being "questioned" by the Executive in the courts. The controversy over the Alien and Sedition Acts reminds us how one political party in control of both the Legislative and the Executive Branches sought to use the courts to destroy political opponents.

The Supreme Judicial Court of Massachusetts noted in *Coffin* that "the privilege secured . . . is not so much the privilege of the house as an organized body, as of each individual member composing it, who is entitled to this privilege, *even against the declared will of the house.*" 4 Mass., at 27 (emphasis added). In a similar vein in *Brewster* we stated:

> "The immunities of the Speech or Debate Clause were not written into the Constitution simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by *insuring the independence of individual legislators.*" 408 U. S., at 507 (emphasis added).

See also *id.,* at 524. We perceive no reason to undertake, in this case, consideration of the Clause in terms of separating the Members' rights from the rights of the body.

Assuming, *arguendo,* that the Congress could constitutionally waive the protection of the Clause for individual Members, such waiver could be shown only by an explicit and unequivocal expression. There is no evidence of such a waiver in the language or the legislative history of § 201 or any of its predecessors.[8]

---

[8] Section 201 was enacted in 1962. Pub. L. 87–849, 76 Stat. 1119. It replaced a section that had remained unchanged since its original enactment in 1862. Ch. 180, 12 Stat. 577. See Rev. Stat. § 1781; 18 U. S. C. § 205 (1958 ed.). The debates on the 1862 Act reveal no discussion of the speech or debate privilege. See, *e. g.,* Cong. Globe, 37th Cong., 2d Sess., 3260 (1862). As explained in the House Report accompanying the 1962 Act, the purpose of the Act was "to render uniform the law describing a bribe and prescribing the intent or purpose which makes its transfer unlawful." H. R. Rep. No. 748, 87th Cong., 1st Sess., 15 (1961). The

We conclude that there was neither individual nor institutional waiver and that the evidentiary barriers erected by the Speech or Debate Clause must stand. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

MR. JUSTICE STEVENS, with whom MR. JUSTICE STEWART joins, concurring in part and dissenting in part.

The Court holds that *United States* v. *Brewster,* 408 U. S. 501, and *United States* v. *Johnson,* 383 U. S. 169, preclude the Government from introducing evidence of a legislative act by a Member of Congress. I agree that those cases do prevent the prosecution from attempting to prove that a legislative act was performed. I do not believe, however, that they require rejection of evidence that merely refers to legislative acts when that evidence is not offered for the purpose of proving the legislative act itself.

In *Johnson,* the Court held that a Member of Congress could not be prosecuted for conspiracy against the United States based on his preparation and delivery of an improperly motivated speech in the House of Representatives. After noting that the attention given to the speech was not merely "an incidental part of the Government's case," but rather was "an intensive judicial inquiry" into the speech's substance and motivation, *id.,* at 176–177, the Court held that the prosecu-

Senate Report expanded the explanation and said that a purpose of the Act was the "substitution of a single comprehensive section of the Criminal Code for a number of existing statutes concerned with bribery. This consolidation would make no significant changes of substance and, more particularly, would not restrict the broad scope of the present bribery statutes as construed by the courts." S. Rep. No. 2213, 87th Cong., 2d Sess., 4 (1962).

tion violated the express language of the Speech or Debate Clause and the policies that underlie it. The Court carefully emphasized, however, that its decision was limited to a case of that character and "does not touch a prosecution which . . . does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them." *Id.,* at 185.

In *Brewster,* the Court held that the Speech or Debate Clause did not bar prosecution of a former Senator for receiving money in return for being influenced in the performance of a legislative act. The Court read *Johnson* as allowing a prosecution of a Member of Congress so long as the Government's case does not rely on legislative acts or the motivation for such acts. It reasoned that Brewster was not being prosecuted for the performance of a legislative act, but rather for soliciting or agreeing to take money with knowledge that the donor intended to compensate him for an official act. Whether the Senator ever performed the official act was irrelevant.

As a practical matter, of course, it is clear that evidence relating to a legislator's motivation for accepting a bribe will also be probative of his intent in committing the official act for which the bribe was solicited or paid. Nonetheless, the Court made clear in *Brewster* that inquiries into the legislator's motivation in accepting payment are not barred by *Johnson*'s proscription against inquiry into legislative motivation. "[A]n inquiry into the purpose of a bribe," the *Brewster* Court held, " 'does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them.' " 408 U. S., at 526, quoting *Johnson, supra,* at 185. Thus, so long as the Government's case does not depend upon the legislator's motivation in committing an official act, inquiries into his motivation in accepting a bribe—which obviously may be revealing as to both the existence of legislative acts and the motivation for

them—are permissible under the Speech or Debate Clause, as interpreted in *Brewster*.

*Brewster*'s recognition of this distinction, in my judgment, provides strong support for the Government's argument in this case. Here, the Government is seeking to introduce written and testimonial evidence as to Helstoski's motivation in soliciting and accepting bribes. Some of this evidence makes reference to past or future legislative acts for which payment is being sought or given. Obviously, this evidence, to the extent it is probative of Helstoski's intent in accepting payment, is an important and legitimate part of the Government's case against the former Congressman. Whether or not he ever committed the legislative acts is wholly irrelevant to the Government's proof, and inquiry into that subject is prohibited by *Johnson* and *Brewster*. But the mere fact that legislative acts are mentioned does not, in my view, require that otherwise relevant and admissible evidence be excluded. The acts may or may not have been performed; the statements in the letters may be true or false. The existence of the statements does not establish that legislative acts were performed; nor does it constitute inquiry into those acts. To be sure, such statements may reveal some information about the performance of legislative acts and the legislator's motivation in conducting official duties. However, that is also true of other evidence making no reference to specific past legislative acts, but rather dealing only with promises of future performance or less specific commitments to legislative action. *Brewster* establishes that such evidence is admissible in bribery prosecutions because it does not draw in question the legislative act itself or its motivation. The admissibility line should be based on the purpose of the offer rather than the specificity of the reference. So long as the jury is instructed that it should not consider the references as proof of legislative acts, and so long as no inquiry is made with respect to the motivations for such acts, *Brewster* does not bar the intro-

duction of evidence simply because reference is made to legislative acts.*

Indeed, I think it important to emphasize that the majority today does not read *Brewster* to foreclose the introduction of any evidence making reference to legislative acts. The Court holds that evidence referring only to acts to be performed in the future may be admitted into evidence. *Ante,* at 490. The Court explains this holding by noting that a promise to perform a legislative act in the future is not itself a legislative act. But it is equally true that the solicitation of a bribe which contains a self-laudatory reference to past performance is not itself a legislative act. Whether the legislator refers to past or to future performance, his statement will be probative of his intent in accepting payment and, in

---

*In reaching this conclusion, I have not overlooked the language in *Brewster,* relied upon by respondent, that *"Johnson* precludes any showing of how [Brewster] acted, voted, or decided." 408 U. S., at 527. Taken out of context, that language would appear to support Helstoski's claim that all references to legislative action are inadmissible. When placed in its proper context, however, it clearly does not.

The quoted statement was made with respect to the dissent's argument that criminal prosecution should not be permitted since the indictment charged the offense as being in part linked to Brewster's "action, vote and decision on postage rate legislation." In response, the Court pointed out that, while this was true, "[t]he Government, as we have noted, need not *prove* any specific act, speech, debate, or decision to establish a violation of the statute under which appellee was indicted. To accept the arguments of the dissent would be to retreat from the Court's position in *Johnson* that a Member may be convicted if no showing of legislative act is *required." Id.,* at 528 (emphasis added). When placed in this context, I think it clear that the statement relied upon by respondent should be read only as establishing—as *Johnson* itself held, and as the *Brewster* Court read *Johnson*—that a Member of Congress may not be prosecuted if proof of a specific legislative act would be required as an element of the Government's case. The recognition by the Court today that evidence referring to future legislative actions *is* admissible, see *ante,* at 490, itself is a rejection of the broad reading respondent attaches to "any showing."

either event, may incidentally shed light on the performance and motivation of legislative acts. The proper remedy, in my judgment, is not automatic inadmissibility for past references and automatic admissibility for future references. Rather, drawing on the language of the Constitution itself, the test should require the trial court to analyze the purpose of the prosecutor's questioning. If the evidentiary references to legislative acts are merely incidental to a proper purpose, the judge should admit the evidence and instruct the jury as to its limited relevance. The Constitution mandates that legislative acts "shall not be questioned"; it does not say they shall not be mentioned.

The Court properly notes that the Government has no valid complaint simply because application of the Speech or Debate Clause renders some prosecution of Members of Congress "difficult." *Ante,* at 488. But I do not believe the Clause was intended to make such prosecution virtually impossible. In light of the Court's holding in *Brewster* that bribery prosecutions are permissible, it is illogical to adopt rules of evidence that will allow a Member of Congress effectively to immunize himself from conviction simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible. Because I believe the exclusionary rule the Court applies today affords greater protection than is necessary to fulfill the mission of the Speech or Debate Clause, I respectfully dissent to the limited extent indicated above.

Mr. Justice Brennan, dissenting.

While I have no quarrel with the Court's decision to limit the evidence which the Government may introduce at Helstoski's trial, I would go much further and order the dismissal of Helstoski's indictment altogether. "[P]roof of an agreement to be 'influenced' in the performance of legislative acts is by definition an inquiry into their motives, whether or

not the acts themselves or the circumstances surrounding them are questioned at trial." *United States* v. *Brewster*, 408 U. S. 501, 536 (1972) (BRENNAN J., dissenting). I continue to adhere to the view expressed in my dissent in *Brewster*, and would hold that "a corrupt agreement to perform legislative acts, even if provable without reference to the acts themselves, may not be the subject of a general conspiracy prosecution." *Id.*, at 539.