650 A.2d 840

STATE OF NEW JERSEY, PLAINTIFF, v. TOWNSHIP OF LYN-DHURST, A BODY CORPORATE AND POLITIC, ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division Mercer County
General Equity Part

Decided September 2, 1994.

194 

*Jerry Fisher* for plaintiff (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Jerry Fisher* on the brief).

*George F. Kugler,* pro se, for the special prosecutor as intervenor (*Archer & Greiner,* attorneys).

*George A. Savino* for defendant (*George A. Savino* on the brief).

*Leon J. Sokol* for Senators Weiss and Rand (*Sokol, Behot, & Fiorenzo,* attorneys; *Leon J. Sokol* on the brief).

*Robbie Miller* argued the cause on behalf of Assemblymen Roberts and Watson (New Jersey Assembly, Office of the Minority Counsel; *Scarcini and Hollenbeck,* attorneys; *John A. Stone* on the brief).

CARCHMAN, P.J.Ch.

This is a motion to quash deposition subpoenas served on selected members of the New Jersey Senate and Assembly. The issue presented is whether legislators who have previously cooperated and testified in various judicial and investigative proceedings regarding their legislative actions can be compelled in a civil case to give deposition testimony related to the subject matter of their prior testimony. For the reasons set forth below, this court holds that under the Speech or Debate Clause of the New Jersey Constitution, *N.J. Const.* art. IV, § 4, ¶ 9, their testimony cannot be compelled.

The State of New Jersey appearing through Fred DeVesa, then Acting Attorney General, brought this action against the Township

of Lyndhurst (Lyndhurst) seeking a declaratory judgment voiding the award of a $1,500,000 legislative grant disbursed through the Department of Community Affairs (DCA) to Lyndhurst. Plaintiff seeks an order compelling the return of these funds to the State Treasury.

On January 13, 1994, the Legislature, acting through the Joint Budget Oversight Committee (JBOC), allegedly authorized the $1,500,000 transfer. On January 15, 1992, DCA issued a check in that amount to Lyndhurst. Plaintiff alleges that the members of the governing body of Lyndhurst knew at the time that monies were transferred that the transfer resulted from illegal acts committed by the Legislature—through the JBOC and the Office of Legislative Services—and by the executive—through the DCA.

Public reports of this unusually swift transfer generated a number of investigations. Then Attorney General Robert Del Tufo conducted an independent investigation and issued a comprehensive report. *The New Jersey Division of Criminal Justice and the New Jersey State Police Report to Attorney General Robert J. Del Tufo of the Results of the Investigation Into Governmental Processes Employed to Award State Funds to the Township of Lyndhurst Board of Commissioners by the New Jersey Department of Education and the New Jersey Department Of Community Affairs,* (Aug. 16, 1993) (Report). Subsequently, the Legislature enacted legislation creating a special prosecutor and, thereafter, former Attorney General George Kugler was appointed as special prosecutor by the Governor. A grand jury heard testimony and returned indictments and a presentment. (Neither the indictments nor the presentment have been made public and are presently the subject of other proceedings.)

Members of the JBOC and their aides participated to varying degrees in these investigations. In fact, Senators Rand, Weiss and Ewing and Assemblymen Roberts, Frelinghuysen and Watson executed a document entitled "Limited Waiver of Legislative Privilege." This document provides:

> I, [name], having been a member of the 204th and 205th sessions of the Legislature of the State of New Jersey, having served, and presently serving, as a [Senator/Assemblyman], do hereby waive any claim of legislative privilege on my behalf by any member of my Legislative staff, the [Senate/Assembly party] staff and/or the Office of Legislative Services, with respect to any and all conversations, directions, research, requests, and/or action pertaining to the organization, evaluation, approval and/or execution of the January 13, 1992, transfer of Inter-departmental State Employee Health Benefits funds to the Department of Community Affairs, whether prior to or subsequent to said approval.

Before executing the written waiver and giving a statement to the Attorney General's investigator, Senator Weiss gave an oral waiver on the record to the same effect. (The language of the oral waiver is somewhat different from that of the written waiver. The waiver speaks to the assertion of privilege "on behalf" of the Senator by others, including staff personnel. After reviewing the transcript of the oral waiver, this court concludes that there is no substantive difference between the two waivers.)

The State brought a motion for summary judgment. In support of the motion, several members of the JBOC submitted affidavits detailing their legislative involvement (or lack thereof) in the matter. This court denied the motion without prejudice pending limited discovery of specified individuals including the proposed depositions of each of the six members of the JBOC (Senators Rand, Weiss and Ewing and Assemblymen Roberts, Watson and Frelinghuysen). Asserting the immunity provided in the Speech or Debate Clause, all the subpoenaed members of the JBOC, with the exception of Senator Ewing and Assemblyman Frelinghuysen, now move to quash the deposition subpoenas *ad testificandum* issued by Lyndhurst. Lyndhurst, the special prosecutor and the Attorney General argue that any immunity which would otherwise attach under the Speech or Debate Clause has been waived as a result of the previous voluntary testimony of the JBOC members in the matter as well as the execution of waivers of legislative privilege.

The Speech or Debate Clause of the New Jersey Constitution provides that:

Members of the Senate and General Assembly shall, in all cases except for treason and high misdemeanor, be privileged from arrest during their attendance at the sitting of their respective houses, and in going to and returning from the same; and for any statement, speech or debate in either house or at any meeting of a legislative committee, they shall not be questioned in any other place.

[*N.J. Const.* art. IV, § 4, ¶ 9.]

In determining whether conduct other than literal speech or debate falls within the scope of his immunity, a court must decide whether the conduct is:

[A]n integral part of the deliberative and communicative process by which Members participate in committee and [House] proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

[*Gilbert v. Gladden*, 87 *N.J.* 275, 293, 432 *A.*2d 1351 (1981) (Pashman, J., dissenting) (quoting *Gravel v. United States*, 408 *U.S.* 606, 625, 92 *S.Ct.* 2614, 2627, 33 *L.Ed.*2d 583, 602 (1972)).]

*Cf. De Vesa v. Dorsey*, 134 *N.J.* 420, 458, 634 *A.*2d 493 (1993) (Handler, J., concurring in part and dissenting in part) (immunity of Speech or Debate Clause does not prevent judiciary from assessing the constitutional adequacy of legislative action).

■ By previous ruling, this court limited discovery of the JBOC members to an inquiry as to "whether the rules of JBOC were followed concerning the $1.5 million transfer to Lyndhurst." The court must make an initial determination as to whether the discovery sought deals with "legislative action" which would invoke the protections of the Speech or Debate Clause.

The special prosecutor and the State contend that the Speech or Debate Clause is not applicable because there is no threshold showing that *any* legislative activity, whether by affirmative action or by acquiescence, occurred. To this effect, the special prosecutor and State rely on the affidavits filed by each of the JBOC members, stating in part, "I did not vote," or, "I was not polled" concerning the transfer of funds to Lyndhurst.

The record before this court supports the conclusion that, for the purpose of asserting the immunity of the Speech or Debate clause, legislative "action," in the case of some JBOC members by non-action, was present. The Attorney General's report is helpful in understanding the procedures of the JBOC. The report found

that "[t]here are no formal rules detailing the operations of the Committee." *Report, supra,* at 104. JBOC custom established two methods of "action." The methods were described in the report. "In a small percentage of proposed transfers that required JBOC approval, the Legislative Budget and Finance Officer would not make a recommendation, but would seek direction from the Committee members." *Id.* at 106. However:

> The vast majority of the memoranda submitted to the Committee would include a recommendation by the Legislative Budget and finance Officer that the Committee approve or disapprove the subject transfer. In those situations, the Legislative Budget and Finance Officer would close with language to the effect: If I do not hear from you by a specific date (ordinarily ten days) I will consider your *lack of response* as signifying a concurrence in the recommended action and will proceed accordingly.
>
> [*Ibid.* (emphasis added).]

The timing of the Lyndhurst transfer and the affidavits submitted by the JBOC members themselves are not inconsistent with legislative "action" in this second method of approval which entails acquiescence by silence. At oral argument, it was noted that various JBOC members had learned of the transfer before the legislative session adjourned. However, no JBOC member came forward to voice an objection. This court cannot and will not at this point in the litigation decide whether the action of the JBOC was lawful or proper. For the limited purpose of determining the applicability of the Speech or Debate Clause, this court concludes under the facts presented that the lack of action by a legislator in these circumstances may reasonably be considered legislative "action." The Speech or Debate Clause, therefore, applies to the testimony sought by the subpoenas.

 The Speech or Debate Clause, although affording personal protection to the members of the legislature, is primarily designed to prevent encroachment upon a coequal branch of government. The immunity is a "means of protecting the integrity of the legislative process by preventing the 'intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'" *Gilbert, supra,* 87 *N.J.* at 292, 432 *A.*2d 1351 (Pashman, J., dissenting) (quoting *Gravel, supra,* 408 *U.S.* at 617,

92 *S.Ct.* at 2623, 33 *L.Ed.*2d at 597). *See also United States v. Brewster,* 408 *U.S.* 501, 524, 92 *S.Ct.* 2531, 2543, 33 *L.Ed.*2d 507, 525 (1972) ("[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process.").

Because the Speech or Debate Clause is a function of the separation of powers designed to "preserve the constitutional structure of separate, coequal, and independent branches of government," the ordinary rules for waiver such as intentional relinquishment or abandonment of a known right or privilege do not apply. *United States v. Helstoski,* 442 *U.S.* 477, 489–92, 99 *S.Ct.* 2432, 2440–41, 61 *L.Ed.*2d 12, 22–25 (1979) (citing *Johnson v. Zerbst,* 304 *U.S.* 458, 464, 58 *S.Ct.* 1019, 1023, 82 *L.Ed.* 1461, 1466 (1938)). In *Helstoski, supra,* the Supreme Court of the United States held that a former congressman who was charged with a conspiracy to violate a bribery statute did not waive the protection of the Speech or Debate Clause in testifying before a grand jury and voluntarily producing documentary evidence. Such a waiver *may* occur, if ever, only after explicit and unequivocal renunciation of the protection. *Ibid.*

The decisive issue before this court is whether any action a JBOC member has taken constitutes "an explicit and unequivocal waiver of the protection" of the Speech or Debate Clause. In resolving this inquiry the court is mindful that in *Helstoski* this standard was not met even though the legislator claiming the immunity voluntarily testified before a grand jury and produced documents concerning his involvement in the legislative function at issue. This same conduct constituted a waiver of the Fifth Amendment, "but the Speech or Debate Clause provides a separate, and distinct, protection which calls for at least as clear and unambiguous an expression of waiver." *Id.* at 492, 99 *S.Ct.* at 2441, 61 *L.Ed.*2d at 25.

Under the extraordinarily high standard set out in *Helstoski,* this court finds that the actions of the JBOC members, while

constituting waivers for limited purposes, do not amount to an "explicit and unequivocal waiver" of the protection provided by the Speech or Debate Clause. First, JBOC members participated and allowed various aides to participate in a criminal investigation conducted by the Division of Criminal Justice and the New Jersey State Police. This waiver, almost identical to the limited waiver which occurred in *Helstoski*, does not amount to an "explicit and unequivocal waiver."

Additionally, the JBOC members submitted affidavits in the present case concerning the legislative functions at issue. These actions, although they would constitute a waiver of other testimonial privileges, do not constitute a waiver of the protection of the Speech or Debate Clause. Standing alone, the filing of affidavits, or even testimony before a grand jury, without an "explicit and unequivocal" waiver is no waiver at all.

Finally, the members of the JBOC executed documents entitled "Limited Waiver Of Legislative Privilege." These documents by their very title indicate that they are not "explicit and unequivocal" waivers. To the contrary, a careful reading of the limited waiver reveals that the legislator executing the document was not waiving *his* own immunity as to the subject matter described but rather was waiving the immunity as it pertains to his legislative staff, party staff and/or the Office of Legislative Services. Moreover, when placed in context, Senator Weiss' oral waiver is indistinguishable from the written waiver.

It is the unique character of the protection found in the Speech or Debate Clause which allows it to be alternatively asserted and withdrawn depending not only on the situation in which the immunity is invoked but also the type of testimony that is subpoenaed. Unlike testimonial immunity, the Speech or Debate Clause implicates policy considerations that bear on the very foundation of constitutional government. A testimonial privilege is personal. It involves conduct which an individual is engaged in without reference, generally, to the actions or conduct of others.

*But see, e.g., State v. Szemple,* 135 *N.J.* 406, 414, 640 *A.*2d 817 (1994) (marital-communications privilege stems from the strong public policy of encouraging free and uninhibited communication between spouses and, consequently, of protecting the sanctity and tranquility of marriage). A waiver of the Speech or Debate Clause concerns itself by necessity not only with the conduct of an individual legislator but also with the conduct of other legislators and the legislative process itself. As noted in *Helstoski,* it involves the independence and integrity of a coequal branch of government. The necessity for an "explicit and unequivocal waiver" reflects this distinction.

The motions to quash the subpoenas are granted.