NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4678
_____

IN RE: GRAND JURY INVESTIGATION

JOHN DOE; ABC ENTITY,
                                    Appellants
_____

On Appeal from United States District Court
for the District of New Jersey
(D. NJ No. 3-14-mc-00077)
District Judge: Anne E. Thompson
_____

Argued February 19, 2015
Before:  FISHER, JORDAN, and KRAUSE, *Circuit Judges*.

(Filed: February 27, 2015)

Scott W. Coyle, Esq.
Abbe D. Lowell, Esq.  ***ARGUED***
Christopher D. Man, Esq.
Chadbourne & Parke
1200 New Hampshire Avenue, N.W.
Washington, DC 20036

Thomas J. Hall, Esq.
Chadbourne & Parke
1301 Avenue of the Americas
New York, NY 10019

Stephen M. Ryan, Esq.
McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005

Thomas J. Tynan, Esq.
McDermott Will & Emery
500 North Capitol Street, N.W.
Washington, DC 20001

       *Attorneys for Appellants*

Monique Abrishami, Esq.
Joseph P. Cooney, Esq.
Peter M. Koski, Esq.  **ARGUED**
United States Department of Justice
1400 New York Avenue, N.W.
Washington, DC 20539

       *Attorneys for Appellee United States of America*

_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

A federal grand jury is investigating Senator Robert Menendez for official actions he allegedly took on behalf of, and gifts he received from, his close personal friend, Dr. Salomon Melgen. This appeal concerns two general categories of official actions.[1] The first category relates to a billing dispute between Dr. Melgen and the Center for Medicare

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] On appeal, the parties have agreed that Robert Kelly, Senator Menendez's Administrative Director, should have answered questions posed to him before the grand jury. Kelly previously invoked the attorney work-product doctrine when asked about his knowledge of flights taken by Senator Menendez on Dr. Melgen's private jet. Accordingly, we do not address this issue.

2

and Medicaid Services ("CMS").  The Government alleges that Senator Menendez and his staff advocated on Dr. Melgen's behalf in a June 7, 2012, meeting between Senator Menendez and Marilyn Tavenner, then the Acting Administrator of CMS; in a July 2, 2012, follow-up call between Senator Menendez and Tavenner; and in an August 2, 2012, meeting among Senator Menendez, Senator Harry Reid, and Secretary of Health and Human Services Kathleen Sebelius.  The second category relates to Dr. Melgen's interest in a contract with the Dominican Republic government giving him the exclusive right to provide screening equipment for Dominican ports.  Specifically, Kerri Talbot, Senator Menendez's former Chief Counsel, exchanged emails with a staffer from U.S. Customs and Border Protection ("CBP") in which Talbot asked CBP not to donate screening equipment to the Dominican Republic and instead to allow the private contractor—controlled by Dr. Melgen—to provide the equipment.

Michael Barnard, Senator Menendez's Legislative Assistant on health care issues, has been called before the grand jury twice, both times invoking the Speech or Debate Clause to withhold testimony.  In his November 2014 testimony, he refused to answer fifty questions regarding the Senator's conversations with Tavenner and Secretary Sebelius as well as communications between the Senator's Office and Alan Reider, Dr. Melgen's lawyer and lobbyist, about the Tavenner and Sebelius conversations.  Talbot has also appeared twice before the grand jury.  In her most recent testimony, she refused to answer questions about whether Senator Menendez intended to invoke the Speech or

3

Debate Clause to challenge the use of the CBP email chain against him. On November 25, 2014, the District Court granted the Government's motion to compel Barnard and Talbot's testimony on the disputed issues. This appeal followed.[2]

Article I, section 6 of the United States Constitution provides that "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other place." Put simply, the Speech or Debate Clause prohibits questioning a Member of Congress about "legislative acts or the motivation for legislative acts." *United States v. Brewster*, 408 U.S. 501, 512 (1972). "A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it." *Id.*

Some acts by Members of Congress, such as speaking on the House or Senate floor, are "manifestly legislative" such that the Speech or Debate Clause obviously applies to them. *Gov't of the V.I. v. Lee*, 775 F.2d 514, 522 (3d Cir. 1985). But other acts, such as informal legislative fact-finding and informal oversight, are not manifestly legislative, and indeed can look very much like unprotected political acts. *See id.*; *United States v. McDade*, 28 F.3d 283, 300 (3d Cir. 1994). In these latter cases, district courts

---

[2] The District Court had jurisdiction over the matter pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and *Perlman v. United States*, 247 U.S. 7, 13 (1918). We exercise plenary review over the scope of protection provided by the Speech or Debate Clause as it is a pure question of law. *See MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988). We review the District Court's factual findings for clear error.

must make factual findings regarding the content and purpose of the acts and communications in question to assess their legislative or non-legislative character. *See Lee*, 775 F.2d at 522–24. Mere assertions that the Clause applies are insufficient, and the burden of proof resides with the Member of Congress as the proponent of the privilege. *Id.* at 524. Where an act or communication has some legislative and non-legislative components, the correct approach is *not* to conclude that the act or communication is entirely legislative and covered by the Clause or entirely non-legislative and unprotected by the Clause. Rather, the legislative components should be separated from the non-legislative components, if possible, and the latter may be the subject of questioning. *See United States v. Helstoski*, 442 U.S. 477, 488 n.7 (1979); *Lee*, 775 F.2d at 523. Where they are inseparable, the court must ascertain the nature of the act or communication by assessing its predominant purpose. *See Lee*, 775 F.2d at 525 (explaining that a trip consisting of both personal and legislative business could constitute a legislative act if it "contained a significant legislative component" and that a "meeting or trip may be deemed immune even though some personal exchanges transpired").

Here, the parties primarily dispute the legislative character of Senator Menendez's two conversations with Tavenner and his meeting with Secretary Sebelius. These communications are not manifestly legislative acts because they are informal communications with Executive Branch officials, one of whom was at the time a presidential nominee whose nomination was pending before the United States Senate.

5

Therefore, specific factual findings about the communications' legislative character are necessary to decide whether the Speech or Debate Clause applies. *See Lee*, 775 F.2d at 524. The District Court granted the Government's motion to compel the withheld testimony because it decided that these communications were unprotected "efforts by [M]embers of Congress to influence the Executive Branch." (App. 6 (internal quotation marks omitted).)

At this stage, we cannot adequately evaluate the District Court's decision because it did not fully explain the basis for its factual determination that the acts here are not legislative. Accordingly, we will remand the case to the District Court to make specific factual findings about the communications implicated by the grand jury questions, especially the two Tavenner conversations, the Sebelius meeting, and discussions with Reider before and after these conversations.

On remand, the contents and purposes of each disputed communication must be separately analyzed to decide whether the evidence shows that it was a legislative act. This inquiry must involve careful analysis of the record evidence already before the District Court, including the contemporaneous emails, calendar entries, and notes related

to each communication.[3]  It may also involve either testimony or affidavits from the Senator or his staff about the contents and purposes of the communications.  *See In re Grand Jury (Eilberg)*, 587 F.2d 589, 597 (3d Cir. 1978).  We leave to the District Court's discretion whether to consider such testimony, affidavits, or any other new evidence about the contents and purposes of the purportedly protected communications in an *in camera* proceeding.  *See, e.g.*, *In re Grand Jury Subpoena*, 745 F.3d 681, 690 (3d Cir. 2014).  Finally, given the sensitive constitutional interests at stake, the parties have a responsibility to clearly identify the areas that remain in dispute for the District Court.  At oral argument, the parties clarified that the disputed issues are now limited to only some of the fifty questions that Barnard refused to answer and to the use of the CBP email

---

[3] There is evidence supporting both the Government's and the Senator's positions regarding the legislative nature of these communications.  For example, Danny O'Brien, Senator Menendez's Chief of Staff, asked Senator Menendez before his meeting with Secretary Sebelius whether he had told Dr. Melgen about the meeting, supporting the inference that at least one purpose of the meeting was to assist Dr. Melgen.  Senator Menendez counters that the discussions focused on policy, not Dr. Melgen's case, and in the meeting with Secretary Sebelius, "[n]ot one participant mentioned Dr. Melgen's name." (Appellant's Br. 45.)  On remand, the District Court must consider these and other competing facts in making its findings.

chain against the Senator.[4]  We trust they will do the same for the District Court on

remand.

     For the reasons set forth above, we will vacate the order of the District Court and

remand the case for further proceedings consistent with this opinion.

---

[4] Of the fifty questions Barnard refused to answer, Senator Menendez's brief conceded that questions about whether Reider asked the Senator's Office to assist Dr. Melgen in his billing dispute are permissible.  (Appellant's Br. 42 n.11.)  Therefore, Questions 1-4 are permissible, and no further fact-finding is necessary.  (Supplemental App. 536.)  Additionally, in his brief and at oral argument, the Senator conceded that "logistical" questions, as opposed to questions about the contents of particular conversations, are permissible.  (Appellant's Br. 42 n.11.)  Therefore, Questions 5 (asking, generally, whom the Senator met with to assist Dr. Melgen); 6-7, 12 (asking about the first Tavenner conversation); 21-24, 27 (asking about the second Tavenner conversation); 38-41, and 50 (asking about the Sebelius meeting) are permissible. (Supplemental App. 536–39.)  Finally, the Senator's brief conceded that questions about whether Barnard discussed the Tavenner call or the Sebelius meeting with Reider are permissible.  (Appellant's Br. 42 n.11.)  Thus, Questions 31 and 45 are permissible.  No further fact-finding is necessary regarding any of these permissible questions.