**UNITED STATES of America,**
**Appellant,**

v.

**SAM GOODY, INC., and Samuel Stolon,**
**Defendants-Appellees.**

**In re UNITED STATES of**
**America, Petitioner.**

**Nos. 597, 903, Dockets 81–1336, 81–3087.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1982.

Decided March 15, 1982.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn (Thomas P. Puccio, Attorney-in-Charge, Organized Crime Strike Force, Lawrence H. Sharf, Sp. Counsel, Brooklyn, N. Y., on the brief), for appellant, petitioner.

William L. Warren, New York City (Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for defendant-appellee Sam Goody, Inc.

Martin R. Gold, New York City (Gold, Farrell & Marks, New York City, on the brief), for defendant-appellee Stolon.

Before FEINBERG, Chief Judge, MANSFIELD and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The United States seeks to appeal pursuant to 28 U.S.C. § 1291 (1976) from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, Jr., *Judge*, granting the motions of defendants Sam Goody, Inc. ("Goody"), and Samuel Stolon for a new trial after jury verdicts of guilty on charges of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 (1976) and copyright infringement in violation of 17 U.S.C. § 506(a) (1976). Alternatively, the United States petitions pursuant to 28 U.S.C. § 1651 (1976) for a writ of mandamus directing the district court to reinstate the jury verdicts, enter judgment, and impose sentence. Because neither 28 U.S.C. § 1291 nor any other statutory provision authorizes an appeal by the government from an order granting a new trial in a criminal case, we dismiss the appeal for lack of appellate jurisdiction. Because we conclude that the circumstances of this case do not justify the granting of the extraordinary writ of mandamus, we deny the petition.

## I.  BACKGROUND

The pertinent facts may be summarized briefly. Goody operates a large chain of retail record stores in the New York City area. Stolon was its vice president in charge of procurement. Between June and

October, 1978, Goody purchased more than 100,000 counterfeit eight-track and cassette tapes, including thousands of copies of the original soundtracks from the films "Saturday Night Fever," "Grease," and "Thank God It's Friday," and of popular recordings such as "The Stranger" by Billy Joel, "Flowing Rivers" by Andy Gibb, and "Slowhand" by Eric Clapton. Most of these counterfeit tapes allegedly were shipped by Goody to an affiliate in Minnesota. On the basis of these events and allegations, Goody and Stolon, along with Goody's president, George Levy, were named as defendants in a sixteen-count indictment charging each of them with one count of racketeering in violation of 18 U.S.C. § 1962(c) (1976) (the "RICO count" [1]), three counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 (the "transportation counts"), and twelve counts of copyright infringement in violation of 17 U.S.C. § 506(a) (the "copyright counts").

The trial of the case lasted approximately one month. At the conclusion of the government's case, the court entered judgments of acquittal in favor of Goody on the RICO count and six of the copyright counts, in favor of Stolon on the same six copyright counts, and in favor of Levy on all counts. After the close of all the evidence, Goody and Stolon moved to dismiss the remaining counts; the court denied these motions, leaving for submission to the jury the three transportation counts and six copyright counts against Goody, and the same three transportation counts and six copyright counts, plus the RICO count, against Stolon. The jury found Goody guilty on two transportation counts and three copyright counts

and acquitted it on the remaining transportation count and three copyright counts. The jury found Stolon guilty on one transportation count and one copyright count and acquitted him on the RICO count, two transportation counts, and five copyright counts.

Each defendant moved, pursuant to Fed. R.Crim.P. 29, for a judgment of acquittal on the counts on which he or it had been found guilty, and moved alternatively, pursuant to Fed.R.Crim.P. 33, for a new trial. In an opinion reported at 518 F.Supp. 1223, familiarity with which is assumed, the court denied the motions for acquittal on the ground that the evidence, viewed in the light most favorable to the government, was sufficient to allow reasonable jurors to find each defendant guilty beyond a reasonable doubt. *Id.* at 1224. Nevertheless, the court granted the motions for a new trial "in the interest of justice," Fed.R.Crim.P. 33, because of the cumulative effect of three factors. First, the court found that the evidence of interstate transportation of the stolen goods was "slim" and that there was a "distinct risk" that the jury had been improperly influenced by the allegations of the RICO count. 518 F.Supp. at 1225. Second, the court accused the government of improperly delaying the correction of what the court characterized as the "false testimony" of an FBI agent who appeared as a government witness, *id.* at 1225–26, and found that there was a strong possibility that this "false testimony," which was "before the jury for a long period of time," might have influenced the jury's consideration of the rest of the evidence, *id.* at 1226.[2]

---

1. The "RICO," or Racketeer Influenced and Corrupt Organization, title of the Organized Crime Control Act of 1970 makes it unlawful, *inter alia*, to conduct the affairs of an enterprise, whose activities affect interstate commerce, "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include any of a large number of state and federal offenses, including the interstate transportation of stolen property in violation of § 2314. A "pattern" of racketeering activity is defined in § 1961(5) as at least two of the acts specified in § 1961(1) within any ten-year peri-

od subsequent to the effective date of the RICO title.

2. The incident referred to involved the testimony of Richard Ferri, a Special Agent of the Federal Bureau of Investigation, who stated, with some apparent uncertainty, that handwritten notes made during interviews with certain prosecution witnesses might have been lost or destroyed. Following this testimony, the district judge warned the government that he might be required, under *United States v. Bufalino,* 576 F.2d 446, 448–50 (2d Cir.), *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978), to exclude the testimony of witness-

Third, the court thought it possible that the various unproven charges might have had a "cumulative adverse [e]ffect ... upon the jurors' deliberations." *Id.* at 1225. The court "believe[d] that there was substantial prejudice suffered by the defendants here as a result of the factors enumerated above," *id.* at 1226, and concluded that it must "exercise its discretion to order a new trial in the interests of justice," *id.* at 1225.

The government filed its notice of appeal under 28 U.S.C. § 1291, seeking reversal of the order granting a new trial. Thereafter, recognizing that § 1291 may be inapplicable, the government petitioned for a writ of mandamus under 28 U.S.C. § 1651, ordering the district court to reinstate the guilty verdicts and to enter judgments thereon. We conclude that § 1291 does not authorize the present appeal and that the circumstances do not warrant issuance of mandamus.

## II. APPELLATE JURISDICTION

■ Section 1291 provides, in relevant part, that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." A final judgment or order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the court to do but execute the order. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). " '[T]he final judgment rule is the dominant rule in federal appellate practice,' " *DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962), quoting 6 Moore, *Federal Practice* 113 (2d ed. 1953), and is designed to prevent the parties from taking piecemeal appeals, leading to judicial inefficiency and unnecessary delay of the conclusion of the litigation.

An order granting a new trial has none of the earmarks of a final decision. It settles no rights between the parties, but instead initiates a new proceeding to determine those rights. Accordingly, such orders have almost uniformly been held interlocutory,[3] and hence nonappealable, both in civil cases, *see, e.g., Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), and in criminal cases, *United States v. Hitchmon,* 602 F.2d 689,

es for whom the government had failed to preserve interview notes. On the following day Agent Ferri testified, outside the presence of the jury, that on the previous evening he had reviewed the files and found that no interview notes had been lost or destroyed and that in fact the government had produced all such material for the defense. Three weeks later Ferri substantially repeated this testimony before the jury.

3. There is one apparent exception—but it is perhaps more apparent than real—in *California v. Stewart,* 384 U.S. 436, 497–99, 86 S.Ct. 1602, 1639–40, 16 L.Ed.2d 694 (1966) (decided with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), in which the Supreme Court construed the "final decision" requirement of 28 U.S.C. § 1257(3) to allow the Court to grant certiorari to the California Supreme Court although the latter had ordered a new trial following its suppression of a confession obtained in violation of the defendant's due process rights. The Court stated its reasoning as follows:

> After certiorari was granted in this case, respondent moved to dismiss on the ground that there was no final judgment from which the State could appeal since the judgment below directed that he be retried. In the event respondent was successful in obtaining an acquittal on retrial, however, under California law the State would have no appeal. Satisfied that in these circumstances the decision below constituted a final judgment under 28 U.S.C. § 1257(3) (1964 ed.), we denied the motion.

384 U.S. at 498 n.71, 86 S.Ct. 1640 n.71. Stern & Gressman, *Supreme Court Practice* § 3.15, at 107 (4th ed. 1969), describes this as "a sensible result which is difficult to reconcile with the language of § 1257." But whatever *Stewart's* impact may be on the concept of finality for purposes of discretionary review by the Supreme Court, we think it has little import for analysis of finality within the meaning of § 1291. Whether or not to grant review by certiorari under § 1257(3) is a matter committed to the discretion of the Court, which is exercised only where there are "special and important reasons." Sup.Ct.R. 17.1. The conclusion, as in *Stewart,* that a decision has sufficient finality to allow the Court to exercise its discretion to grant review of a question of special importance does not warrant the conclusion that such a decision is sufficiently final to give a party the right to *compel* a court to hear an appeal.

692–93 (5th Cir. 1979) (en banc); *United States v. Taylor,* 544 F.2d 347, 349 (8th Cir. 1976) ("[C]ourts of appeal will entertain appeals only from final judgment and ... an order granting a new trial is not a final judgment."); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3919, at 331 (Supp.1982) ("An order that merely grants a new trial ... is not subject to appeal by the government ....").

The final judgment requirement is not entirely inflexible, having been tempered by certain exceptions. The principal judge-made exception, articulated by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is known as the "collateral order" doctrine. Under that doctrine, a small class of orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action," and which are too important and too independent of the cause itself to be denied immediate review, may be appealed under § 1291 before final judgment is entered. *Id.* at 546, 69 S.Ct. at 1225. The government contends that the new-trial order in the present case is a collateral order within the meaning of the *Cohen* doctrine.

The *Cohen* doctrine does have some applicability to criminal cases, *Carroll v. United States,* 354 U.S. 394, 403–04, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957) (dictum), for although *Cohen* itself was a civil case, it construed § 1291, which by its terms applies to "all final decisions of the district courts" without differentiation between civil cases and criminal prosecutions. See *Arizona v. Manypenny,* 451 U.S. 232, 244–45, 101 S.Ct. 1657, 1665–66, 68 L.Ed.2d 58 (1981); *Abney v. United States,* 431 U.S. 651, 659 n.4, 97 S.Ct. 2034, 2040 n.4, 52 L.Ed.2d 651 (1977). The teaching of the Supreme Court, however, is that interlocutory orders "relating to a criminal case [that] may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders .... are very few." *Carroll v. United States, supra,* 354 U.S. at 403, 77 S.Ct. at 1338. Thus, the *Carroll* Court noted only one prior Supreme Court decision

expressly applying the *Cohen* reasoning to a criminal case, to wit, *Stack v. Boyle,* 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951), which held that an order relating to the amount of bail to be exacted was a final collateral order. In addition, the *Carroll* Court said that

[e]arlier cases illustrated, sometimes without discussion, that under certain conditions orders for the suppression or return of illegally seized property are appealable at once, as where the motion is made *prior to indictment,* or in a *different district* from that in which the trial will occur, or *after dismissal* of the case, or perhaps where the emphasis is on the *return of property* rather than its suppression as evidence.

354 U.S. at 403–04, 77 S.Ct. at 1338 (emphasis in original; footnotes omitted). More recently, the Court has applied the collateral order doctrine to allow a defendant to appeal immediately an order rejecting his claim that a trial would subject him to double jeopardy in violation of his constitutional rights. *Abney v. United States, supra.* The courts of appeals, in applying the *Cohen-Carroll* principle, have permitted government appeals under § 1291 from certain types of sentencing decisions, *e.g., United States v. Busic,* 592 F.2d 13, 25–26 (2d Cir. 1978); *see United States v. United States District Court,* 645 F.2d 7 (6th Cir. 1981) (denying mandamus because appeal available under § 1291); *United States v. United States District Court,* 601 F.2d 379, 380 (9th Cir. 1979) (same), from an order disqualifying the entire United States Attorney's office in a pending prosecution, *United States v. Caggiano,* 660 F.2d 184, 189–90 (6th Cir. 1981), and from an order appointing a special prosecutor to pursue a prosecution whose dismissal had been sought by the government, *United States v. Cowan,* 524 F.2d 504, 507 (5th Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976).

So far as we can determine, however, every court presented with the question has viewed an order granting a new trial as not sufficiently final or collateral to

give a right of appeal under the principles of *Cohen* and *Carroll*. We share that view. In the present case, the trial judge ordered a new trial "in the interest of justice," Fed.R.Crim.P. 33, because he believed it possible that the jury, which had before it legally sufficient evidence to support the defendants' convictions, might have reached its verdicts of guilty because of factors other than that evidence, namely the presence of the RICO count, the presence of the other unproven charges, and the effect of what the judge called "false testimony" that was belatedly corrected. Such an order for a new trial can hardly be considered "independen[t] from the main course of the prosecution," *Carroll v. United States*, 354 U.S. at 403, 77 S.Ct. at 1338, for it focused squarely on the course of that prosecution and determined that the prosecution must be repeated. Nor does the order determine an important claim of right with any sort of finality, for the disputed substantive question was not, as the government would frame it, whether the defendants should have a new trial, but rather whether the jury would have found the defendants guilty absent the prejudicial factors cited by the trial judge. The new-trial order does not answer the substantive question but only starts the process by which it may be answered. Hence we conclude that the order granting Goody and Stolon a new trial was not a final collateral order within the meaning of *Cohen* and *Carroll*.

The government argues persuasively that some of the factors that militate against our entertaining appeals from new-trial orders in other circumstances do not pertain here. Here, for example, the desire to avoid piecemeal appeals is not a consideration since there can be no review of this new-trial order after a final judgment is entered: if the new trial results in a conviction, the propriety of the new-trial order will have become moot; and if the new trial results in an acquittal, the government will be precluded from appealing because of the Double Jeopardy Clause, *e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) ("Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed ... without putting [a defendant] twice in jeopardy, and thereby violating the Constitution, quoting *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).' ") Hence, the policy against piecemeal appeals is not a factor.

Nor are we concerned in the present circumstances with double jeopardy restrictions on the government's right to appeal in a criminal case. Since the jury had rendered verdicts of guilty, the government does not seek to put the defendants through the ordeal of a repeated prosecution; the appeal, if sustained, would simply require the reinstatement of the verdicts already obtained. In *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975), the Supreme Court, in allowing a government appeal under 18 U.S.C. § 3731 (1976)[4] from a judgment of acquittal entered after a jury verdict of guilty, stated that "the constitutional protection against Government appeals attaches only where there is a danger of subjecting the defendant to a second trial for the same offense ...." In *Martin Linen Supply Co., supra*, the Court stated similarly that "where a Government appeal presents no threat of successive prosecutions, the Dou-

---

4. Section 3731 provides, in pertinent part, as follows:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information ....

\*　　\*　　\*　　\*　　\*　　\*

The provisions of this section shall be liberally construed to effectuate its purposes.

ble Jeopardy Clause is not offended." 430 U.S. at 569–70, 97 S.Ct. at 1353–54. Thus, if we had jurisdiction of the government's appeal, the Double Jeopardy Clause would not bar a reversal and the consequent reinstatement of the jury's verdicts.

The government also points out that Congress has expressed a policy favoring appeals by the government in criminal cases to the extent permitted by the Double Jeopardy Clause (Government's brief on appeal at 52). This policy is spelled out in § 3731 as amended in 1970, *see* note 4 *supra*, which governs most appeals by the government in criminal cases. That section, however, makes appealable only orders of the district court that dismiss an indictment or otherwise terminate the prosecution, *e.g., United States v. Wilson, supra,* 420 U.S. at 337–38, 95 S.Ct. at 1018–19, or orders that suppress or exclude evidence,[5] *e.g., United States v. Helstoski,* 442 U.S. 477, 487 n.6, 99 S.Ct. 2432, 2439 n.6, 61 L.Ed.2d 12 (1979). There is no suggestion either in the language of § 3731, or in the legislative history, or in the cases construing the section, that Congress's broadening of the government's right to appeal was intended to permit appeal of nonsuppression-type orders that did not terminate the prosecution. *See United States v. Wilson, supra,* 420 U.S. at 338, 95 S.Ct. at 1019; Conference Report, H.R.Rep. No.1768, 91st Cong., 2d Sess. 21 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad. News 5842, 5848; 15 C. Wright, A. Miller &

E. Cooper, *Federal Practice and Procedure* § 3919, at 331 (Supp.1982) ("The right of the government to appeal from an order that dismisses an indictment or information is subject to at least some of the constraints of the final judgment requirement."). Thus, § 3731 does not, as the government here concedes, make appealable an order granting a new trial. *United States v. Alberti,* 568 F.2d 617, 620–21 (2d Cir. 1977);[6] *United States v. Taylor, supra.*

■ The same considerations that have led the courts to avoid construing § 3731 broadly as authorizing appeals from newtrial orders lead us to eschew expansion of the traditional scope of § 1291 to allow the present appeal. It has long been established that appeals by the government in criminal cases are not favored and are permitted only if expressly authorized by statute. *E.g., Arizona v. Manypenny, supra,* 451 U.S. at 245, 101 S.Ct. at 1665–66; *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 568, 97 S.Ct. at 1352 ("United States cannot appeal in a criminal case without express congressional authorization."); *United States v. Wilson, supra,* 420 U.S. at 336, 95 S.Ct. at 1018 ("Government [can]not take an appeal in a criminal case without express statutory authority."); *United States v. Sanges,* 144 U.S. 310, 311–23, 12 S.Ct. 609, 609–15, 36 L.Ed. 445 (1892). As the Court stated in *Carroll v. United States, supra,*

---

5. To the extent that an order granting a new trial includes an order suppressing or excluding evidence, it is appealable under § 3731. *See United States v. Margiotta,* 662 F.2d 131 (2d Cir. 1981) (court's pre-retrial decision that certain evidentiary rulings excluding evidence would be repeated at retrial, held appealable; decision that certain instructions to jury would be repeated, held nonappealable); *United States v. Horwitz,* 622 F.2d 1101 (2d Cir. 1980) (court's granting of new trial, in lieu of dismissal of indictment, with the pre-retrial ruling that unless the government granted immunity to witnesses called by the defense the testimony of the government's own immunized witnesses would be excluded, held appealable), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981).

6. The government states that our decision in *Alberti* is not dispositive of the present case,

pointing out that "[t]he opinion ... did not consider the issue whether the order was appealable under Section 1291." (Government's brief on appeal at 41 n.28.) While this statement is accurate so far as it goes, the implication that the question was not considered at all is not accurate. The briefs on appeal in *Alberti* argued the government's position that it could appeal under § 3731, and our opinion rejected those contentions. Following the filing of the opinion, however, the government, represented by, *inter alios,* Edward R. Korman, then an attorney in the Department of Justice, filed a petition for rehearing based exclusively on the proposition that an appeal by the government from an order granting a new trial in a criminal case is authorized by § 1291. (Petition for Rehearing, filed Sept. 7, 1977.) We denied the petition on October 11, 1977, without a separate opinion. 568 F.2d at 617.

appeals by the Government in criminal cases are something unusual, exceptional, not favored. The history [of federal appellate jurisdiction] shows resistance of the Court to the opening of an appellate route for the Government until it was plainly provided by the Congress, and after that a close restriction of its uses to those authorized by the statute.

354 U.S. at 400, 77 S.Ct. at 1336. This historic policy disfavoring government appeals in criminal cases, which has repeatedly been reaffirmed by the Court concurrently with its recognition of Congress's increasing allowance of interlocutory appeals, has a prudential basis, "over and above the constitutional protection against double jeopardy," *DiBella v. United States, supra,* 369 U.S. at 130, 82 S.Ct. at 660. The principal prudential bases are the avoidance of undue delay, *see Carroll v. United States, supra,* 354 U.S. at 415, 77 S.Ct. at 1344 ("Delays in the prosecution of criminal cases are numerous and lengthy enough without sanctioning appeals that are not plainly authorized by statute."), and the avoidance of harassment, *see Arizona v. Manypenny,* in which the Court stated:

The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign.... This concern also underlies the constitutional ban against double jeopardy, which bars an appeal by the prosecutor following a jury verdict of acquittal.... In general, both concerns translate into the presumption that the prosecution lacks appellate authority absent express legislative authorization to the contrary.

451 U.S. at 246, 101 S.Ct. at 1666 (citations omitted). Finding no express authority in § 1291 authorizing government appeals in criminal cases, and viewing the new-trial order as a nondispositive part of the main stream of the prosecution, we decline to construe § 1291, or the *Cohen-Carroll* exception, so broadly as to give us jurisdiction in the present case.

We are mindful of the fact that if the new-trial order is not reviewed by interlocutory appeal it will never be subject to review. This circumstance may well be unfortunate, for if the new-trial order was an abuse of the trial court's discretion the public will have been forced needlessly to bear the cost of an expensive and time-consuming new trial; and, indeed, because of the passage of time, the government may be unable again to assemble the live proof needed to obtain a new conviction. The fact that review may never be available, however, has been deemed insufficient to require appellate courts to review an order that is plainly interlocutory. In *Carroll v. United States, supra,* the Supreme Court recognized that

[m]any interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable. In particular is this true of the Government in a criminal case, for there is no authority today for interlocutory appeals, and even if the Government had a general right to review upon an adverse conclusion of a case after trial, much of what it might complain of would have been swallowed up in the sanctity of the jury's verdict.

354 U.S. at 406, 77 S.Ct. at 1339 (footnotes omitted). Similarly, in *DiBella v. United States, supra,* the Court stated as follows:

Nor are the considerations against appealability made less compelling as to orders granting motions to suppress, by the fact that the Government has no later right to appeal when and if the loss of evidence forces dismissal of its case.... [T]he Government is no more disadvantaged than in the case of an adverse ruling on the evidence during trial.... What disadvantage there be springs from the historic policy, over and above the constitutional protection against double jeopardy, that denies the Government the right of appeal in criminal cases save as expressly authorized by statute.... No such expression appears in ... § 1291, and the Government's only right of appeal, given by ... § 3731, is confined to

narrowly defined situations not relevant to our problem. Allowance of any further right must be sought from Congress and not this Court.

369 U.S. at 130, 82 S.Ct. at 659–60 (citations omitted).

We conclude, therefore, that the fundamental policy expressed in § 1291 against appeals of nonfinal orders, reinforced by the long-established prudential policy barring government appeals in criminal cases absent express statutory authority, precludes our expansion of the *Cohen* doctrine in order to entertain this appeal from the order granting a new trial. We echo the analogous words of the Court in *Carroll v. United States*, that

[i]f there is serious need for appeals by the Government from [orders granting new trials], or unfairness to the interests of effective criminal law enforcement ... it is the function of Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases.

354 U.S. at 407, 77 S.Ct. at 1340 (footnote omitted).

The appeal is dismissed for want of appellate jurisdiction.

### III. MANDAMUS

■ The extraordinary writ of mandamus is a drastic remedy reserved for exceptional circumstances. Its extraordinary character is illustrated in part by the fact that the writ will not be granted if a direct appeal is available, *see Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Ex parte Rowland*, 104 U.S. 604, 617, 26 L.Ed. 861 (1882), and the fact that it will not be granted simply because review is sought of an order that is *not* appealable, *see Will v. United States*, 389 U.S. 90, 96–97, 104, 88 S.Ct. 269, 274, 278, 19 L.Ed.2d 305 (1967); *United States v. Margiotta*, 662 F.2d 131, 134 n.8 (2d Cir. 1981). The latter fact was discussed at some length in *Will*, in which the Supreme Court vacated a mandamus granted by the court of appeals that forbade the district court to require the government to supply a bill of particulars in a criminal case:

All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court.... This general policy against piecemeal appeals takes on added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him.... Moreover, "in the federal jurisprudence, at least, appeals by the Government in criminal cases are something unusual, exceptional, not favored," *Carroll v. United States*, 354 U.S. 394, 400 [77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442] (1957), at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition, cf. *Fong Foo v. United States*, 369 U.S. 141 [82 S.Ct. 671, 7 L.Ed.2d 629] (1962).... Mandamus, of course, may never be employed as a substitute for appeal in derogation of these clear policies.

389 U.S. at 96–97, 88 S.Ct. at 274 (citations omitted). The *Will* Court observed that although mandamus had properly issued to review certain types of orders in criminal cases, *id.* at 97–98, 88 S.Ct. at 274–75, the Court had "never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal," *id.* at 98, 88 S.Ct. at 275, and it noted that the fact that the government has no right to appeal from a final judgment in a criminal prosecution does not make the case for mandamus review any more compelling, *id.* at 97, 88 S.Ct. at 274. The writ thus is not to be granted merely because it is the only way in which the district court's new-trial order might be reviewed. Rather, extraordinary circumstances must be shown.

■ Traditionally the writ of mandamus has been "used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its

duty to do so.'" *Will v. United States, supra,* 389 U.S. at 95, 88 S.Ct. at 273, quoting *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). The party seeking issuance of the writ has the "burden of showing that its right to issuance of the writ is 'clear and indisputable,'" *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), quoting *United States v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899), and that the action or inaction of the district court has "amount[ed] to a judicial usurpation of power," *Allied Chemical Corp. v. Daiflon, Inc., supra,* 449 U.S. at 35, 101 S.Ct. at 190. It is not sufficient that the decision have been wrong, *e.g., id.; Will v. United States, supra,* 389 U.S. at 98 n.6, 88 S.Ct. at 275 n.6, or even that it have been "gross[ly]" wrong, *United States v. DiStefano,* 464 F.2d 845, 850 (2d Cir. 1972), for

> [m]andamus, it must be remembered, does not "run the gauntlet of reversible errors." *Bankers Life & Cas. Co. v. Holland [supra,* 346 U.S. at 382, 74 S.Ct. at 147]. Its office is not to "control the

decision of the trial court," but rather merely to confine the lower court to the sphere of its discretionary power. *Id.* at 383 [74 S.Ct. at 148].

*Will v. United States, supra,* 389 U.S. at 104, 88 S.Ct. at 278.

■ The circumstances of the present case do not justify the granting of mandamus. There is no doubt that under Fed.R. Crim.P. 33 the district court had the power to grant a new trial in the interest of justice. The court clearly articulated its reasons for believing that the jury might have been influenced improperly to return guilty verdicts, and we see no respect in which the court disregarded any of the rules or standards governing the granting of new trials.[7] We may disagree with the court's characterization of the FBI agent's initial testimony as "false" and with its view that the defendants were prejudiced by that testimony.[8] And we may be less convinced than was the trial court of the possibility of prejudice from the presence of the RICO count, which the court dismissed as to Goody during the trial, and of which the jury acquitted Stolon.[9] But we could

---

**7.** By contrast, in *In re United States,* 565 F.2d 173 (1st Cir. 1977), the court of appeals found that the district court did not apply any of the standards governing the granting of a new trial on the basis of newly discovered evidence, and hence found mandamus vacating the new-trial order appropriate.

**8.** As the record appears before us, *see* note 2 *supra,* it is not at all clear that Agent Ferri's initial testimony was false or inaccurate. Ferri's initial testimony expressed some uncertainty as to whether notes had been lost or destroyed. (*See* Trial Transcript at 747–91.) Although the defendants characterize his later testimony—*i.e.,* that his subsequent review of the files revealed no such loss or destruction and indeed revealed the delivery of all notes to the defense—as a "recantation" (Defendants' brief on appeal at 43–47), on the record before us it seems to be consistent with the initial testimony. In any event, it is difficult to see how the defendants were prejudiced by Ferri's initial testimony, since if it were construed as evidence that notes had been destroyed, it gave the defendants a better jury argument than did the later clarification that notes had not been destroyed and had been furnished to the defendants. The defendants apparently took full advantage of the ambiguities by arguing at trial that Ferri's initial testimony was in fact truth-

ful and proved that interview notes had in fact been lost or destroyed. And the district court instructed the jury that if it found, as defendants contended, that notes had been destroyed,

> you may infer that the missing notes contained evidence unfavorable to the prosecution on the issues in this case . . .

(Trial Transcript at 3993–94.)

**9.** The district court relied to some extent on our decision in *United States v. Guiliano,* 644 F.2d 85, 88–89 (2d Cir. 1981), which the court recognized involved somewhat different circumstances. In *Guiliano* we, first, reversed for insufficient evidence the defendant's conviction on one of the substantive counts that was a necessary predicate to his conviction under RICO (*see* note 1, *supra*), second, reversed the RICO conviction for want of the necessary predicate, and, finally, remanded the remaining substantive count for a new trial because of the possible prejudicial spillover from the presence of the untenable RICO count. We stated, in pertinent part, as follows:

> The jury's guilty verdict on Count 3 may well have been influenced . . . also by the very allegation of the RICO charge. One of the hazards of a RICO count is that when the Government is unable to sustain a conviction under this statute, it will have to face the

hardly say as a matter of law, in assessing whether the government had earned a "clear and indisputable" right to the guilty verdicts, that the defendants could not possibly have been prejudiced by the presence of the unproven charges. Thus, although we might not have ruled as the district judge did, we surely cannot say that he so clearly abused his discretion, in assessing what justice required, that the decision to grant a new trial constituted a usurpation of power.

The petition for a writ of mandamus is denied.

MANSFIELD, Circuit Judge (concurring in part and in the result):

I concur in the result, but solely because we are bound by our decision on rehearing in *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977), in which we rejected the argument that § 1291 permits an appeal by the government from an order granting a new trial. Otherwise I would hold that in these circumstances, where the trial judge grossly abused his discretion in granting a new trial despite overwhelming evidence of guilt, § 1291 should be construed to permit a government appeal.

The effect of the district court's order is to deprive the public of a fairly-won and fully-supported conviction. The grounds advanced by the district judge for granting a new trial (as the majority seems to recognize) are unsupportable. The denial of review therefore works a grave injustice. It was these basic principles that led the Supreme Court to permit appeals, even from technically non-final orders, in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Stack v. Boyle*, 342 U.S. 1, 6–7, 72 S.Ct. 1, 4,

96 L.Ed. 3 (1951); and *Abney v. United States*, 431 U.S. 651, 657–59, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977). In my view the Supreme Court should grant similar relief here.

Despite the jury's finding, based on ample evidence presented in a long trial, that the appellants are guilty beyond a reasonable doubt of certain of the charges in the indictment, and despite the absence of any rational grounds for upsetting the jury's findings, the verdict has, by a stroke of the district court's pen, been forever erased and the appellants are given another bite at the cherry. Should the government be unable, because of the passage of time or lack of prosecutorial resources to reassemble all of the proof for a long and expensive retrial, the guilty appellants will go scot-free. In this vital respect the district court's order differs from a similar order in a civil case where, even after a new trial ends with a contrary result, the order granting the new trial may then be reviewed and set aside. *Bigart v. Goodyear Tire & Rubber Co.*, 361 F.2d 317, 318 (2d Cir. 1966) (per curiam); *Damanti v. A/S Inger*, 314 F.2d 395, 398 (2d Cir.), *cert. denied*, 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963); *Junea Square Corp. v. First Wisconsin National Bank*, 624 F.2d 798, 806 (7th Cir.), *cert. denied*, 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980); *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 759 (3d Cir. 1977).

Moreover, the effect of denying reviewability in the present case is not to avoid delay but to increase it. The public, which has prevailed, is now put to the delay and expense of seeking once more to obtain a conviction even though the jury's guilty verdict after the first long trial should

claim that the prejudicial effect of tarring a defendant with the label of "racketeer" tainted the conviction on an otherwise valid count. *Id.* at 89. Noting that such a contention often would fail, we found in *Guiliano* that the frailty of the evidence on one element of Count 3 made it "just," 28 U.S.C. § 2106, to order a retrial free of any RICO allegations.

In the present case we think the likelihood that the jury's deliberations were tainted by the

RICO allegation is far less than the likelihood found in *Guiliano*, for here, unlike *Guiliano*, the jury acquitted on the RICO count that was submitted to it, and the district court found there was sufficient evidence to support all of the guilty verdicts that were rendered. Nonetheless, we recognize that the possibility of taint often involves factors whose presence and effect the trial judge is better situated than we to assess.

stand. The ironic part is that if the trial judge had only *dismissed* the counts of which appellants were found guilty rather than grant a new trial, the government would be entitled to appeal as of right under 18 U.S.C. § 3731 and the dismissal would be reversed, leaving the verdicts of guilty to stand and avoiding the waste of another long trial. In my view it is fundamentally unjust to deny appealability simply because the district court granted a new trial rather than dismiss the indictment.

As the majority recognizes, neither the policy against piecemeal appeals nor the Double Jeopardy Clause mandate a rule denying appealability. Nor can the rule be justified on the ground that it conserves judicial resources. Orders granting new trials in a criminal case are rare.[1] In most instances the judge would grant a new trial after a guilty verdict only when an egregious error has been disclosed, in which event the government would be unlikely to appeal. To deny review when the district judge articulates no reasonable basis for his conclusion, and the record discloses none, hardly is in the interest of justice.

The majority, after correctly rejecting all other possible arguments for the result it reaches, bases its refusal to interpret § 1291 to allow a government appeal in these circumstances on two grounds. First, it relies on the lack of finality of an order granting a new trial and the failure of such an order to fit within an exception to the finality rule. While an order granting a new trial is not normally thought of as final, the same can be said of the type of orders made appealable under the collateral order doctrine in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny. In my view the reasons that led the Supreme Court in *Cohen* to create an exception favor a similar exception for orders granting a criminal defendant a new trial. The

government's inability to obtain review of this order after a retrial makes the district court's decision to grant a new trial a separable issue; the injustice to the public that occurs when a new trial is granted for no supportable reason makes this an order "too important to be denied review." *Id.*, 337 U.S. at 546, 69 S.Ct. at 1225.

The second ground relied upon by the majority for denying reviewability is the old maxim that "appeals by the government in criminal cases are not favored and are permitted only if expressly authorized by statute." Maj. Op. at 23. Reliance on such common law maxims as a substitute for analysis is risky; as Prof. Karl Llewellyn has shown, for virtually every common law maxim there is a contradictory one. K. Llewellyn, *The Common Law Tradition* 521–35 (1960). Here the simple relevant antidote is that an injustice should not go unredressed. More important, however, the majority's maxim has been called into question by Congress itself, which, in adopting the Criminal Appeals Act, 18 U.S.C. § 3731, stated that "[t]he provisions of this [Act] shall be liberally construed to effectuate its purposes." While § 3731 does not provide jurisdiction for this appeal, it is a persuasive response to the maxim that appeals by the government in criminal cases are disfavored.

The circumstances of this case provide compelling evidence of the need for appellate review of orders granting a criminal defendant a new trial. Judge Platt based his decision on three grounds (which he described as the "only" grounds): spillover from the RICO count, the failure of the government to correct so-called "false" testimony by one of its witnesses, and "the possible cumulative adverse affect [sic] that the various unproven charges may have had upon the jurors' deliberations." 518 F.Supp. at 1225. None of these reasons withstands analysis. The alleged RICO

---

1. Although the Administrative Office of the U.S. Courts keeps no records of the number of such orders, an informal survey I have conducted of the offices of the Clerks of several district courts that conduct a large number of criminal trials (the Southern District of California, the

Southern District of Florida, the Eastern District of Louisiana, and the District of Maryland) reveals that orders granting new trials after a guilty verdict are few and far between, or, as one Clerk put it, such an order is "a rare bird."

spillover clearly did not hurt the defendants, for the jury acquitted Stolon, the only defendant remaining in the RICO count after the court had dismissed the count as against Goody. The evidence in support of the remaining counts was the same as that in support of the RICO count. Thus the only conceivable harm would have been RICO's use of the word "racketeering." But from the beginning the prosecutor made clear that although RICO

> "stands for Racketeer Influence and Corrupt Organizations[,] . . . that doesn't mean, ladies and gentlemen, that we are going to be—and I quote, with organized crime or the mob. That's not what is involved in this case." (Prosecutor's opening statement).

Nor does our decision in *United States v. Guiliano*, 644 F.2d 85 (2d Cir. 1981), require a new trial. In *Guiliano* we reversed a conviction on a RICO count on the ground that there was insufficient evidence to support it and then ordered that a new trial be held on a separate count because on the facts of that case the RICO evidence did spill over into the jury's consideration of the substantive count. Since the jury in the present case acquitted on the RICO count and the evidence on the other counts was the same, there could not have been any such prejudicial spillover.

The second ground upon which the district court rested its decision to grant a new trial, the alleged failure of the government to correct in a timely fashion "false" testimony by Agent Ferri that he had destroyed some of his interview notes, is totally without merit. The majority states that it is difficult to show how the defendants

> "were prejudiced by Ferri's testimony, since if it were construed as evidence that notes had been destroyed, it gave the defendants a better jury argument [i.e., that the prosecution had destroyed exculpatory evidence] than did the later clarification that notes had not been destroyed and had been furnished to the defendants." (Maj. Op. at p. 26 n.8).

This is, however, an understatement. There is *no* way in which the defendants could have been prejudiced by this testimony, as was confirmed by their decision not to recall Agent Ferri before the jury after being offered the opportunity to do so by the trial judge. Indeed, the defendants' argument was that the initial testimony (characterized by Judge Platt as "false") was the truth, and that the "correction" was false. Finally, the original testimony, described by the trial judge as "false," was corrected by the witness in his subsequent testimony before the jury. Nothing supports the district judge's conclusion that the defendants may have been prejudiced by these events.

The final ground relied upon by the district court in granting a new trial was that the unproved charges may have had a cumulative prejudicial effect on the defendants. Each count in the indictment in his case, however, referred to a discrete transaction, and the jury was properly charged to consider each count separately. Its acquittal on many counts shows that it was able to distinguish among them. The claim of prejudice is therefore groundless, as we have consistently held under the same circumstances. *United States v. Sperling*, 506 F.2d 1323, 1342–43 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Gaines*, 460 F.2d 176, 179–80 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 172, 34 L.Ed.2d 139 (1972); *United States v. Ferrara*, 451 F.2d 91, 97 (2d Cir. 1971), *cert. denied*, 405 U.S. 1032, 92 S.Ct. 1291, 31 L.Ed.2d 489 (1972); *United States v. Adcock*, 447 F.2d 1337, 1339 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971); . *United States v. Febre*, 425 F.2d 107, 113 (2d Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970). Neither the district court nor appellant have pointed to any facts differentiating the present case from those where we have denied a new trial sought on grounds of cumulative prejudicial effect. Moreover, much of the evidence introduced to support these counts would on retrial of the counts on which the defendants were convicted be admissible on the issues of their knowledge and intent. Fed. R.Evid. 404(b). Thus this ground is unsupported.

The district judge's decision to grant these defendants a new trial was therefore a clear abuse of discretion. For the reasons stated, although I concur in the view that mandamus relief is not available and I am forced by *Alberti* to concur in the result, I do so with reluctance because I believe that *Alberti* was wrongly decided.