UNITED STATES of America

v.

Dominick NAPOLITANO, a/k/a "Sonny Black," Benjamin Ruggiero, a/k/a "Lefty," Joseph Messina, a/k/a "Joey," Anthony Rabito, a/k/a "Mr. Fish," Nicholas Santora, a/k/a "Nicky," James Episcopia, a/k/a "Jimmy Legs," Antonio Tomasulo, a/k/a "Boots," John Cerasani, a/k/a "Boobie," Dennis Mulligan, Vincent Lopez and Vincent Piteo, Defendants.

No. 81 Cr. 803 (RWS).

United States District Court,
S.D. New York.

Nov. 12, 1982.

See also D.C., 552 F.Supp. 465.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for U.S.; Barbara S. Jones, Louis J. Freeh, Asst. U.S. Attys., New York City, of counsel.

Paul Rao, New York City, for defendant Rabito.

Irwin Klein, New York City, for defendant Tomasulo.

## OPINION

SWEET, District Judge.

After a five-week multi-defendant jury trial, defendant Anthony Rabito ("Rabito") was found guilty on two counts of a four-count indictment. Defendant Antonio Tomasulo ("Tomasulo") was found guilty on one count. Rabito had been charged in three of the counts with participation in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One) (hereinafter referred to as "RICO"), possession with intent to distribute methaqualone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Three), and conspiracy with intent to distribute methaqualone in violation of 21 U.S.C. § 846 (Count Four). Tomasulo had been charged in only the RICO count. Rabito was named in five predicates in the RICO count, one involving his methaqualone activities, the other four involving murder conspiracies. Tomasulo was named in two predicates, one involving a conspiracy to distribute methaqualone, the other involving a conspiracy to conduct a gambling business in violation of 18 U.S.C. § 1955.

Rabito was found guilty on Counts Three and Four, and not guilty on the RICO count. Tomasulo was found guilty on the one count he was charged with. Both Rabito and Tomasulo now move pursuant to Fed.R.Crim.P. 29(c) and 33 for judgment of acquittal, or in the alternative for a new trial, respectively. For the reasons stated below, the motions will be denied.

### Rule 29 Motions

A motion for judgment of acquittal is addressed to the sufficiency of the Government's evidence. The classic formulation of the test, adopted in this circuit, requires the court to:

> determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilty beyond a reasonable doubt.

*United States v. Lieberman,* 637 F.2d 95, 104–05 (2d Cir.1980), (*quoting Curley v. United States,* 160 F.2d 229, 232–33 (D.C. Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947)). The evidence is viewed in the light most favorable to the Government. *United States v. Stirling,* 571 F.2d 708 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978).

*Rabito*

■ Applying this standard to Rabito, his Rule 29 motion must be denied. He was found guilty of substantive and conspiracy charges involving possession of methaqualone with intent to distribute. The Government's evidence consisted of numerous wiretap recordings of Rabito in which he used jargon which expert testimony by a qualified Government witness showed referred to dealings in methaqualone. Also, surveillance testimony by FBI agents implicated Rabito in a scheme to deal in methaqualone.

Rabito challenges the sufficiency of this evidence primarily on the ground that it failed to establish that the pills Rabito was dealing in contained a controlled substance, the "look alike" theory. Specifically, Rabito claims that because the Government did not introduce any physical evidence to show that the pills contained methaqualone, a reasonable juror could not find Rabito guilty beyond a reasonable doubt. From the evidence taken as a whole, however, *United States v. Taylor,* 464 F.2d 240, 244 (2d Cir.1972), the jury was entitled to infer that Rabito was dealing in a controlled substance even though the evidence was circumstantial. *United States v. Barnes,* 604 F.2d 121, 156 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

Rabito also claims that it is "paradoxical" that he was found guilty of both Counts Three and Four, while his co-defendant Nicholas Santora was only convicted on Count Four. There is no inconsistency in these results. The evidence against Rabito and Santora was different. It was not unreasonable for the jury to conclude from the evidence that Santora was not guilty of the substantive offense, but that his activities were those of a co-conspirator.

*Tomasulo*

■ Preliminarily, it is necessary to dispose of Tomasulo's argument that only substantive offenses can act as predicates to a RICO conviction. This argument is irrelevant in this case because Tomasulo was found guilty of violating 18 U.S.C. § 1962(d), which makes it "unlawful for any person to *conspire* to violate any of the" substantive provisions of the statute. Indeed, our Court of Appeals has held that a conspiracy can properly be charged as a predicate act of racketeering under section 1962(c), one of the substantive sections of the statute. *United States v. Weisman,* 624 F.2d 1118, 1123–24 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).

■ Tomasulo challenges the sufficiency of the Government's evidence on two grounds: first, that the Government failed to prove the existence of a single "enterprise," and second, that the evidence was insufficient to establish Tomasulo's participation in the racketeering conspiracy. Applying the standard outlined above, the Government's evidence in this case was sufficient to enable a reasonable juror to find Tomasulo guilty on the RICO count beyond a reasonable doubt.

■ To secure a RICO conviction the Government must prove the existence of an "enterprise" by evidence of an ongoing organization and by evidence that the various associates function as a continuing unit. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Proof of these elements is required to avoid the danger created by RICO of guilt by association. *United States v. Bledsoe,* 674 F.2d 647, 664 (8th Cir.1982). Tomasulo claims that the indictment in this case merely "strung together" thirteen separate and distinct crimes with the only nexus among them being "a common key figure or two," and that the Government's proof failed to establish an enterprise. There was substantial proof, however, adduced from the testimony of Government witnesses, and tape-recorded and photographic evidence to allow the jury to conclude beyond a reasonable doubt that an enterprise existed that had distinct characteristics, functioned as a continuing unit, had an ascertainable structure, and whose associates had a common or shared purpose. *Cf. id.* at 664–65. Indeed, the Government's conten-

tion that the defendants' participation in the "Bonanno Family of La Cosa Nostra" is the classic example of the type of enterprise that RICO was designed to encompass. *Id.* at 665.

Tomasulo's argument that the evidence was insufficient to establish his participation in the racketeering conspiracy also fails. The indictment alleged two predicates, one involving a conspiracy to distribute methaqualone, the other a gambling conspiracy. As to the drug conspiracy, the Government presented evidence of Tomasulo's participation in the form of testimony by an undercover FBI agent, and two tape-recorded conversations involving methaqualone transactions in which Tomasulo was a participant. As to the gambling conspiracy, the Government offered the testimony of two undercover FBI agents, an expert witness in gambling who analyzed various wiretap recordings, and several of the recordings themselves. Viewing this evidence in the light most favorable to the Government, which is required for the purposes of this motion, *United States v. Stirling, supra,* 571 F.2d at 733, there was sufficient evidence to allow a reasonable juror to conclude guilt beyond a reasonable doubt. The FBI agents' testimony, which must be credited, tends to establish Tomasulo's participation in both conspiracies. The tape-recorded conversations, in which Tomasulo participated and in which reference was made by others to Tomasulo's activities, corroborate his participation.

### Rule 33 Motions

#### Rabito

Rabito argues in support of his Rule 33 motion that he is entitled to a new trial on two grounds. First, he claims that the guilty verdict on Counts Three and Four is contrary to the weight of the evidence. As discussed above, however, the evidence presented was sufficient to enable a reasonable juror to conclude that Rabito was guilty beyond a reasonable doubt.

Rabito's second argument in support of his motion for a new trial is that he was prejudiced by "spillover" from the RICO count, of which he was acquitted. In effect, Rabito argues that this court's denial, in an opinion dated June 25, 1982, of his pretrial motion for severance pursuant to Fed.R.Crim.P. 8 & 14 was improper. That motion was denied because the defendants had failed to carry their burden of showing substantial prejudice from a joint trial. *See United States v. Napolitano,* No. 81 Cr. 803, slip op. at 4–5 (S.D.N.Y. June 25, 1982), and cases cited therein.

Rabito bears the same burden in making this motion after the trial, and has again failed to sustain it. His basic contention is that most of the proof at trial was directed at the RICO count, of which he was acquitted, and that the jury was therefore "subliminally influenced" to find him guilty on Counts Three and Four. The evidence to support Counts Three and Four, however, as noted above, was not insubstantial. Rabito has not demonstrated substantial prejudice, *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971), but has merely made a bald assertion that he would have fared better had he been tried alone, *United States v. Magnano,* 543 F.2d 431, 435 n. 2 (2d Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). There is no indication beyond Rabito's bare contention that the jury was not able to follow this court's instructions and compartmentalize the evidence against each defendant. Indeed, the fact that Rabito was acquitted of the RICO count is itself a strong indication that it was able to separately consider the evidence. *See United States v. Kennedy,* 564 F.2d 1329, 1334–35 (9th Cir. 1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

Rabito relies heavily on *United States v. Guiliano,* 644 F.2d 85 (2d Cir.1981). This reliance is misplaced. In *Guiliano,* the defendant had been convicted after a jury trial on a RICO count and on two counts of bankruptcy fraud. The Court of Appeals reversed one of the bankruptcy fraud convictions because the evidence to support it was insufficient. Because that count was one of the two predicates supporting the

RICO count, that conviction was also reversed. In addition, although the court found sufficient evidence to support the other fraud count, it ordered a new trial "because of the distinct risk that the jury was influenced in its disposition of this count by improper evidence and by the allegations of the RICO count." *Id.* at 88–89. The court noted that:

> [o]ne of the hazards of a RICO count is that when the Government is unable to sustain a conviction under this statute, it will have to face the claim that the prejudicial effect of tarring a defendant with the label of "racketeer" tainted the conviction on an otherwise valid count.

*Id.* at 89. The court then went on to explain that:

> [t]hat claim, of course, need not always or even often prevail, but it does in this instance when the evidence was barely sufficient to permit an inference of the disputed element of knowledge and considerable prejudice was injected by placing Guiliano at the store just before the fire.

*Id.*

The spillover claim does not prevail here. There are two critical distinctions between this case and *Guiliano.* First, Rabito was found not guilty by the jury on the RICO count, whereas in *Guiliano* the jury improperly convicted on the RICO count on the basis of insufficient evidence. Therefore, this case is like *United States v. Sam Goody, Inc.,* 675 F.2d 17 (2d Cir.1982), in which the court noted that:

> we think the likelihood that the jury's deliberations were tainted by the RICO allegation is far less than the likelihood found in *Guiliano,* for here, unlike *Guiliano,* the jury acquitted on the RICO count that was submitted to it, and the district court found there was sufficient evidence to support all of the guilty verdicts that were rendered.

*Id.* at 27 n. 9. *See also id.* at 29 (Mansfield, J., concurring in part and in the result) (distinguishing *Guiliano* from situation where jury acquits on RICO count). Second, in *Guiliano,* the spillover claim as to

one of the non-RICO counts prevailed because the evidence was "barely sufficient" to support one of the elements of the charge, and because evidence of scant probative value, but with considerable potential for prejudice, was admitted to support the charge. 644 F.2d at 88–89. Here, the evidence against Rabito was properly admitted, and was sufficient to support the jury's verdict.

*Tomasulo*

Tomasulo also claims that he is entitled to a new trial because of prejudicial "spillover." His claim is different from Rabito's, however, in that he does not claim that spillover from another count prejudiced his right to a fair trial on the RICO count. Rather, he argues that the predicates to the RICO count involving the murder conspiracies, in which Tomasulo was not named, spilled over and prejudiced him regarding the drug and gambling conspiracies. As outlined above, there must be a showing of substantial prejudice to sustain this claim.

Tomasulo's sole argument is that the disparity in the proof offered to establish the murder conspiracies, as opposed to the proof offered to establish his methaqualone and gambling activities, prejudiced his right to a fair trial. Disparity in the proof is not alone a sufficient ground either for severance prior to trial, or for a new trial after a guilty verdict. There must still be a showing of prejudice. *See United States v. Corr,* 543 F.2d 1042, 1052–53 (2d Cir.1976); *United States v. Gilbert,* 504 F.Supp. 565, 566–67 (S.D.N.Y.1980). *See also United States v. Aloi,* 511 F.2d 585, 598 (2d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1973). Tomasulo has not made such a showing. While he was not named in the murder conspiracy predicates, there was a continuing relationship between him and the other defendants that justified trying them all together. *See United States v. Capra,* 501 F.2d 267, 281 (2d Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975). Also, the evidence was not "so little or so 'vastly disproportionate'" to that admitted against the other

defendants so as to require severance. *Id.* (*quoting United States v. Rizzo,* 491 F.2d 215, 218 (2d Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974)).

Most significantly, the jury apparently was able to follow this court's instructions and considered the evidence separately against each defendant. This is evidenced by the fact that Rabito was acquitted of the RICO count, and the fact that defendant John Cerasani was acquitted altogether.

 In a "supplemental" motion Tomasulo also requests a new trial on the basis of newly discovered evidence. The evidence consists of a Research Study published in 1980 by the Institutional Research and Development Unit of the FBI entitled "The Special Agent in Undercover Operations: A Study of the Selection, Supervision, Administration and Stressors Associated with Undercover Assignments." Counsel for Tomasulo explains that the existence of the study has "just come to [his] attention," and that the report would have been "tellingly utilized" in the cross-examination of agent Pistone.

The Government responds by affidavit that neither the members of the prosecution team nor the FBI Special Agent in charge of the investigation leading to this prosecution were aware of the Study prior to this motion. Freeh aff. ¶¶ 3 & 4. Indeed, the study is classified. *Id.* at 3.

In any event, Tomasulo's contentions that the study would have been "tellingly utilized" to test credibility, and that "the case would have been tried differently" had the study been produced, do not warrant granting the motion for a new trial:

> [S]uch a motion "should be granted only with great caution" and only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal.

*United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980) (citations omitted). This court has conducted an *in camera* review of the Study, and concludes that it does not measure up to this exacting standard. At most, it would be used on cross-examination to explore the stress under which an undercover agent operates, an area that was fully probed at the trial. Thus, it would be cumulative. More importantly, it is inconceivable that use of the Study at a new trial "would probably lead to an acquittal." The study is a general profile of the undercover agent and the stress he operates under. It does not refer specifically to any individuals or operations. Therefore, its probativeness is questionable.

Tomasulo's contention that the nondisclosure of the Study violates the doctrine of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is meritless. Since Tomasulo made no specific request for this material,[1] he must show that the Study, viewed in the context of the entire record, creates a reasonable doubt that otherwise would not exist. *Ostrer v. United States,* 577 F.2d 782, 786 (2d Cir.1978) (citing *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976)). As outlined above, the material in the study does not rise to this level.

For the reasons stated above, the motions of both Rabito and Tomasulo are denied.

IT IS SO ORDERED.

---

1. Rabito requested pre-trial disclosure of "psychiatric, mental and medical records of both undercover agents herein, from the commencement of their undercover activities to date. Together with FBI procedures, regulations and directives pertaining to the length of term of undercover activity." Subpoena dated July 16, 1982. The Study does not fit this description.